7 A.3d 557

**Raymond B. CUFFLEY, Jr.**

v.

**STATE of Maryland.**

**No. 136, Sept. Term, 2008.**

Court of Appeals of Maryland.

Oct. 28, 2010.

570

Marc A. DeSimone, Jr., Assistant Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for petitioner.

Brenda Gruss, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

We consider in this case whether and, if so, under what circumstances, a judge who agrees to be bound to the terms of a plea agreement that calls for a sentence "within the guidelines" may impose a sentence that involves a term of incarceration that exceeds the guidelines but suspends all but the part of the sentence that falls within the guidelines. The answer to that question is of great concern to Petitioner Raymond B. Cuffley, Jr., who pleaded guilty pursuant to a binding plea agreement and was sentenced in the fashion we have described. We hold that, under the circumstances presented here, the sentence imposed exceeded the terms of the plea agreement, rendering the sentence illegal. Petitioner is entitled to the remedy of specific performance of the plea agreement, requiring re-sentencing in conformance with it.

I.

Petitioner entered a plea of guilty to the charge of robbery, at a hearing in the Circuit Court for Harford County on October 23, 2002. At the outset of the hearing, the State set forth the terms of the parties' plea agreement:

Mr. Cuffley is here today charged with robbery. There were plea discussions and he has indicated he will enter a guilty plea. As a consequence of the plea, the State will recommend a sentence within the guidelines as formulated by myself and Miss Casper [defense counsel], we came up with four to eight years. The sentencing will be deferred [until disposition of a pending probation violation].

Defense counsel's only addition to the State's proffer was that "certainly no promises—but that the court might consider somewhere later down the road a commitment to the Department of Health and Mental Hygiene for purposes of treatment."

The court restated its understanding of the agreement: Petitioner would plead guilty to the charge of robbery, which "carries a maximum possibility [sic] penalty of 15 years incarceration[,]" and "[t]he plea agreement, as I understand it, is that I will impose a sentence somewhere within the guidelines. The guidelines in this case are four to eight years. Any conditions of probation are entirely within my discretion."

The Circuit Court engaged Petitioner in a colloquy to ensure that his plea was knowing and voluntary. The State then recited the factual basis for the plea. Following that, the Circuit Court accepted the plea agreement, bound itself to its terms, and deferred disposition.

At the sentencing hearing several months later, the court recalled correctly that "the guidelines in the case were four to eight years." The State asked the court to sentence Petitioner "within the guidelines" and to make the sentence consecutive to a six-year sentence that was imposed in the probation violation case that had precipitated the deferral of disposition in the present case. Defense counsel asked the court to sentence Petitioner at the "bottom of the guidelines," and "to consider at least part of that time to be concurrent to the time he is now serving, with a later consideration for modification to a drug treatment program." The court sentenced Petitioner to "15 years at the Department of Correction, all but six years suspended, consecutive to the sentence imposed by [the judge who presided over the probation violation]. Upon release the defendant will be placed on a period of probation for five years [with a number of special conditions]."

Four-and-a-half years later, Petitioner filed a "Motion to Correct an Illegal Sentence," pursuant to Maryland Rule 4–

345(a).[1] The motion came on for a hearing before the sentenc-ing judge. Petitioner argued that the sentence violated the plea agreement. He testified that he understood the agree-ment to call for a total sentence of no more than eight years, and "not to [his] knowledge" did the lawyer who represented him at the time tell him that he could receive suspended time above the eight-year sentencing guidelines cap. Petitioner further testified that he would have remembered had his counsel advised him that his total exposure included suspend-ed time because he is "always concerned" about how much time he "will have over his head." He also testified that he did not understand that the sentence imposed was illegal until his then-current counsel explained that to him.

Ms. Casper, the lawyer who represented Petitioner at the plea, testified that she could not recall her conversation with Petitioner concerning the sentencing term of the plea agree-ment. She further testified, however:

> I believe that what we discussed, and what the plea agree-ment was, was that the time to serve was going to be within that four to eight years. That was the plea agreement, was the time to serve. The suspended sentence period and the period of probation are up to the court. And I believe it's the practice in this court that that wouldn't be determined until the day of the actual sentence being handed down.

---

1. Maryland Rule 4–345(a) permits a court to correct an illegal sentence at any time. "If a sentence is 'illegal' within the meaning of that section of the rule," that is, the illegality "inheres in the sentence itself," then "the defendant may file a motion in the trial court to correct it, notwithstanding that (1) no objection was made when the sentence was imposed, (2) the defendant purported to consent to it, or (3) the sentence was not challenged in a timely-filed direct appeal" or at some other previous procedural juncture. *Chaney v. State,* 397 Md. 460, 466, 918 A.2d 506, 509–10 (2007). If the court denies a motion to correct such an illegality, the defendant has the right to challenge the ruling on direct appeal. *Id.* at 466–67, 918 A.2d at 510.

 We have held that a sentence that exceeds the sentence to which the parties agreed as part of a plea agreement is an illegal sentence within the meaning of Rule 4–345(a). *Dotson v. State,* 321 Md. 515, 521–22, 583 A.2d 710, 713 (1991).

The court denied the motion. The court noted preliminarily that "standard procedure in this court, and it still is today, is that suspended time and conditions of probation are within [the court's] discretion." The court explained that these discretionary powers were "alluded to" at the plea hearing, even if not specifically stated on the record. With regard to the advice Petitioner received from counsel concerning the meaning of the "within the guidelines" sentencing term, the court stated to Petitioner's then-counsel: "I'm quite confident that your client was advised, even without hearing from Miss Casper, but having heard from her, I'm certain that she advised him that there would be suspended time." The court added that Petitioner "got exactly what he bargained for."

The Court of Special Appeals affirmed the judgment in an unreported opinion. The court recognized that the term "sentence" can mean a combination of suspended and executed periods of incarceration. The court also noted statements in the *Maryland Sentencing Guidelines Manual* that "[s]uspended time *is not* considered in determining whether the sentence falls within the recommended guidelines range[,]" and "[t]he guidelines range represents only non-suspended time." Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual,* ch. 12. 1, at 42 (2005).[2] Based on those statements, the Court of Special Appeals concluded that "for the purposes of determining whether a sentence is within the guidelines ... only the active portion of the sentence is considered[.]" The intermediate appellate court found "substantial evidence in the record" to support the Circuit Court's finding that defense counsel had informed Petitioner that a sentence "within the guidelines" meant a sentence of actual incarceration only, which supported the Circuit Court's conclusion that the sentence was consistent with the plea agreement.

---

**2.** The current version of the Sentencing Guidelines Manual contains the same declarations. *See* Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual* ch. 13. 1, at 55 (2010).

We granted Petitioner's writ of certiorari, *Cuffley v. State*, 406 Md. 743, 962 A.2d 370 (2008), to address the following question:

> Where petitioner pled guilty pursuant to a binding plea agreement, which called for a sentence within the sentencing guidelines range of four-to-eight years incarceration, is a sentence of fifteen years incarceration, with all but six years of that term suspended in favor of probation, illegal?

## II.

It is well documented that plea bargains play a crucial role in the system of criminal justice in Maryland and throughout the United States. In addition to relieving overburdened courts, the termination of charges following plea negotiations:

> "leads to [the] prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned."

*State v. Brockman*, 277 Md. 687, 693, 357 A.2d 376, 380–81 (1976) (quoting *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). Plea agreements, moreover, "eliminate many of the risks, uncertainties and practical burdens of trial, permit the judiciary and prosecution to concentrate their resources on those cases in which they are most needed, and further law enforcement by permitting the State to exchange leniency for information and assistance." *Brockman*, 277 Md. at 693, 357 A.2d at 381. For these reasons, "plea bargains, when properly utilized, aid the administration of justice and, within reason, should be encouraged." *Id.*, 357 A.2d at 381.

Rule 4–243 governs plea agreements and addresses the procedures to be followed when the State and a defendant have entered into a plea agreement. That rule provides, in pertinent part:

(a) **Conditions for agreement.** (1) Terms. The defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition, including one or more of the following:

\* \* \*

(F) That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule.

\* \* \*

(c) **Agreements of sentence, disposition, or other judicial action.** (1) Presentation to the court. If a plea agreement has been reached pursuant to subsection (a)(1)(F) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, *the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such presentence proceedings and investigation as the judge directs.*

(2) Not binding on the court. The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

(3) Approval of plea agreement. *If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement* or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

\* \* \*

(d) **Record of proceedings.** *All proceedings pursuant to this Rule, including the defendant's pleading, advice by the court, and inquiry into the voluntariness of the plea or a plea agreement shall be on the record.* If the parties stipulate to the court that disclosure of the plea agreement or any of its terms would cause a substantial risk to any person of physical harm, intimidation, bribery, economic reprisal, or unnecessary annoyance or embarrassment, the court may order that the record be sealed subject to terms it deems appropriate.

(Emphasis added.)[3] *See also* Rule 4–242(b), (c) (addressing the requirements of the guilty plea itself and mandating, inter alia, that the guilty plea be offered by the defendant personally on the record and in open court, and that the trial judge "may not accept a plea of guilty until after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof," during which the court must "determine[ ] and announce[ ] on the record that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. . . .").

 Rule 4–243 expressly states that the terms of the plea agreement are to be made plain on the record, in the presence of the defendant, for the court to hear and accept or reject. The terms, moreover, must be made " 'express' " and " 'clearly agreed upon *before* the guilty plea is accepted.' " *Solorzano v. State,* 397 Md. 661, 672, 919 A.2d 652, 658 (2007) (quoting *Tweedy v. State,* 380 Md. 475, 487, 845 A.2d 1215, 1222 (2004)).

 Plea bargains are likened to contracts. *Tweedy,* 380 Md. at 482, 845 A.2d at 1219. Consequently, " 'contract principles should generally guide the determination of the proper remedy of a broken plea agreement.' " *Solorzano,* 397

---

**3.** We have reproduced excerpts from the current version of Maryland Rule 4–243. The version of the Rule in effect at the time of Petitioner's guilty plea, save for a renumbering of the sections, is identical in material respect to the current version.

Md. at 668, 919 A.2d at 656 (quoting *State v. Parker,* 334 Md. 576, 604, 640 A.2d 1104, 1118 (1994)). Contract principles, however, "are not enough to resolve disputes over the proper interpretation of a plea bargain." *Solorzano,* 397 Md. at 668, 919 A.2d at 656. Indeed, this Court has previously recognized the limited applicability of contract law principles to plea agreements. *Brockman,* 277 Md. at 697, 357 A.2d at 382–83 ("the standard to be applied to plea negotiations is one of fair play and equity under the facts and circumstances of the case, which, although entailing certain contract concepts, is to be distinguished from . . . the strict application of the common law principles of contracts.").[4] Rather, "[d]ue process concerns for fairness and the adequacy of procedural safeguards guide any interpretation of a court approved plea agreement." *Solorzano,* 397 Md. at 668, 919 A.2d at 656.

In short, fairness and equity govern the enforcement of plea agreements. *Brockman,* 277 Md. at 698, 357 A.2d at 383. Therefore, " 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " *Id.* at 694, 357 A.2d at 381 (quoting *Santobello,* 404 U.S. at 262, 92 S.Ct. 495). Judges, too, are required to adhere to their part of the bargain. *Tweedy,* 380 Md. at 485, 845 A.2d at 1221 (stating that, once the court accepts a plea bargain, the court is "required to impose the agreed upon sentence, assuming that all the conditions imposed upon the defendant were fulfilled"); *State v. Poole,* 321 Md. 482, 496, 583 A.2d 265, 272 (1991) (stating that "fairness and equity required the trial judge to be held to his bargain, vis-a-vis sentencing"). When a defendant's guilty plea rests in part on a promise concerning disposition, and the State or the court violates that promise, "the accused may obtain redress by electing either to have his guilty plea

---

4. It is for this reason that we reject the broad application of contract law principles to interpretation of plea agreements that is proposed by the dissent of Judge Harrell. 416 Md. at 588-602, 7 A.3d at 569-77 (2010) (Harrell, J., dissenting).

vacated or to leave it standing and have the agreement enforced at resentencing." *Brockman,* 277 Md. at 694, 357 A.2d at 381. Whether a trial court has violated the terms of a plea agreement is a question of law, which we review de novo.

▮ The parties do not dispute that the terms of a plea agreement are to be construed "according to the reasonable understanding of the defendant when he pled guilty." *Solorzano,* 397 Md. at 668, 919 A.2d at 656. The parties disagree, however, about whether extrinsic evidence, that is, evidence outside the "four corners" of the plea agreement itself, may be considered in determining the defendant's reasonable understanding of the agreement's terms. Petitioner, relying on Rule 4–243(c), argues that determining his reasonable understanding of a term of a plea agreement must be confined to what the Rule itself expressly mandates be placed on the record at the court proceeding at which the plea agreement is offered and accepted, and that, in keeping with the Rule's requirements, extrinsic evidence of what the Petitioner did or did not understand about the agreement cannot be considered. The State acknowledges Rule 4–243(c), but argues nonetheless that the Rule ought not be read to preclude application of contract law principles, which, in the State's words, "does not preclude examination of extrinsic evidence."

▮ By its express terms, Rule 4–243 mandates that, before the court accepts the defendant's guilty plea, defense counsel and the State's Attorney, on the record and in the presence of the defendant, "*shall* advise the judge of the terms of the agreement." (Emphasis added.) The Rule also mandates that the court, upon accepting and approving the agreement, "*shall* embody in the judgment the agreed sentence[.]" (Emphasis added.) The principal purpose of Rule 4–243 is to eliminate the possibility that the defendant may not fully comprehend the nature of the agreement before pleading guilty. Any less would offend notions of due process. *See Santobello,* 404 U.S. at 261–62, 92 S.Ct. 495 ("[T]he plea must, of course, be voluntary and knowing, and, if it was induced by promises, the essence of those promises must in some way be made known.").

We conclude that, by its express terms, Rule 4–243 requires strict compliance with its provisions. We further conclude, as the natural consequence of requiring strict compliance with the Rule, that any question that later arises concerning the meaning of the sentencing term of a binding plea agreement must be resolved by resort *solely* to the record established at the Rule 4–243 plea proceeding. The record of that proceeding must be examined to ascertain precisely what was presented to the court, in the defendant's presence and before the court accepts the agreement, to determine what the defendant reasonably understood to be the sentence the parties negotiated and the court agreed to impose. The test for determining what the defendant reasonably understood at the time of the plea is an objective one. It depends not on what the defendant actually understood the agreement to mean, but rather, on what a reasonable lay person in the defendant's position and unaware of the niceties of sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding.[5] It is for this reason that extrinsic evidence of what the defendant's actual understanding might have been is irrelevant to the inquiry.

---

**5.** The dissent by Judge Harrell argues that, by referencing the "sentencing guidelines" at the plea hearing, the parties incorporated the *Maryland Sentencing Guidelines Manual* into their plea agreement. 416 Md. at 594–98, 7 A.3d at 572–74 (Harrell, J., dissenting). Because the *Guidelines Manual*, § 8. 1, p. 36 (2001), states that the sentencing "range represents only non-suspended" time, the dissent concludes that the agreed-to plea in this case of four to eight years must refer only to non-suspended time. This suggestion ignores the purpose of Rule 4–243, and contradicts this Court's previous guidance on the very issue presented here.

Rule 4–243 seeks "to promote fair play and equity." *Poole*, 321 Md. at 498, 583 A.2d at 273. Fair play requires that a defendant be made fully cognizant of the terms of the plea to which he agrees. Rather than rely on off-the-record conversations to guarantee this requirement is met, Rule 4–243 mandates that the entire plea be articulated for the record, in open court, so that the defendant accepts the agreement as it exists, on the record, at the time he tenders his plea, and not as it existed at, for example, a prior conference in chambers.

Moreover, as no defendant is presumed to be familiar with the details of the *Maryland Sentencing Guidelines Manual*, incorporating its terms

 If the record of the plea proceeding clearly discloses what the defendant reasonably understood to be the terms of the agreement, then the defendant is entitled to the benefit of the bargain, which, at the defendant's option, is either specific enforcement of the agreement or withdrawal of the plea. *Solorzano*, 397 Md. at 667–68, 919 A.2d at 656. If examination of the record leaves ambiguous the sentence agreed upon by the parties, then the ambiguity must be resolved in the defendant's favor. *See id.* at 673, 919 A.2d at 659; *see also United States v. Gebbie*, 294 F.3d 540, 552 (3d Cir.2002) (ambiguity in plea agreement is resolved against the government "[b]ecause of the Government's advantage in bargaining power"); *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir.1990) (ambiguity in a plea agreement must be resolved against the government because a plea "constitutes a waiver of substantial constitutional rights requiring that the defendant be adequately warned of the consequences of the plea." (Internal quotation marks omitted)).

## III.

 We are left to apply our conclusions to the facts of this case. First, it is evident from what transpired at the

---

into a plea without expressly stating so violates notions of "fair play and equity." The dissent of Judge Harrell would impute to defendants their counsel's knowledge of the *Guidelines Manual.* 416 Md. at 595–96, 7 A.3d at 573 (Harrell, J., dissenting). That proposition, however, offends the notion that it is the defendant, not his counsel, who is waiving constitutional rights and who therefore must fully comprehend the terms of the plea agreement. *See* Rule 4–242(b)(1) (although a defendant may plead not guilty through counsel, a defendant must plead guilty "personally and on the record in open court").

In *Solorzano*, 397 Md. at 664, 919 A.2d at 654, like in this case, the "guidelines" were referenced at the plea hearing. However, this Court unanimously stated that, if the State, as part of a plea bargain, wished to rely on the *Guidelines Manual* provision that a "sentence" refers only to "non-suspended" time, then "the State must make absolutely clear, on the record, that it is doing so, and the defendant must be fully advised as such." *Solorzano*, 397 Md. at 674 n. 2, 919 A.2d at 659 n. 2. Judge Harrell's dissent would, it appears, deviate from that guidance in *Solorzano*. We, however, decline to do so.

hearing on the motion to correct illegal sentence that the Circuit Court considered extrinsic evidence in determining what Petitioner reasonably understood, at the time he pleaded guilty, was the sentencing term of the agreement. That was error, for the reasons we have discussed.

Simply put, the facts that the court and defense counsel understood a sentence "within the guidelines" to refer only to actual incarceration, and that the court could impose a suspended sentence that exceeds the guidelines, are irrelevant to what Petitioner reasonably understood at the time of the plea to be the agreed-upon sentence. Also irrelevant are declarations in the *Guidelines Manual* that suspended time is not considered in determining whether a sentence falls within the guidelines range, which the Court of Special Appeals evidently found significant in affirming the judgment of the Circuit Court. Neither is it relevant that Petitioner's defense counsel believed that she had explained to Petitioner what was meant by a sentence "within the guidelines." Furthermore, it is not relevant that the Circuit Court made a factual finding that defense counsel actually explained to Petitioner sometime before the on-the-record plea proceeding that the court retained the discretion to impose a split sentence exceeding the sentencing guidelines.[6] All that is relevant, for purposes of identifying the sentencing term of the plea agreement, is what was stated on the record at the time of the plea concerning that term of the agreement and what a reasonable lay person in Petitioner's position would understand, based on what was stated, the agreed-upon sentence to be.

 The record of the plea proceeding reflects the following: The prosecutor advised the court that the agreement called for a "sentence within the guidelines as formulated by" the State and the defense, which was "four to eight years."

---

6. Petitioner argues that the Circuit Court was clearly erroneous in finding that defense counsel in fact advised Petitioner about the meaning of a sentence "within the guidelines." We need not address this argument, given that the finding is based on extrinsic evidence, irrelevant to the determination of what Petitioner reasonably understood the sentence to be.

Defense counsel added nothing to explain further what the parties meant by that sentencing term. The court then expressed to Petitioner its understanding of the sentencing term: "The plea agreement, as I understand it, is that I will impose a sentence somewhere within the guidelines. The guidelines in this case are four to eight years. Any conditions of probation are entirely within my discretion." No mention was made at any time during that proceeding—much less before the court agreed to be bound by the agreement and accepted Petitioner's plea—that the four-to-eight-year sentence referred to executed time only. Neither counsel nor the court stated that the court could impose a sentence of more than eight years' incarceration that would include no more than eight years of actual incarceration, with the remainder suspended.[7] Based on this record, a reasonable lay person in Petitioner's position would not understand that the court could impose the sentence it did.

The court's comment at the plea proceeding that "[a]ny conditions of probation are entirely within my discretion" does not change our conclusion. A reasonable lay person in Petitioner's position could understand the court's comment to mean that the court reserved the right to suspend a part of what, at most, would be an eight-year sentence and impose a period of probation accompanied by conditions.

In short, the sentencing term of the agreement to which the court bound itself, when determined by reference to what Petitioner reasonably understood that term to be at the time he pleaded guilty, was that the court would impose a total sentence of no more than eight years, a portion of which the court in its discretion might suspend in favor of a period of

---

7. The State wisely does not attempt to argue that the suspended part of the sentence is not a material term of the agreement, and therefore was not required to be discussed and explained to the defendant. It is beyond cavil that a violation of probation could subject the defendant to additional prison time up to the limits of the suspended part of the sentence, and probation is required when a court gives a suspended sentence. *Cathcart v. State*, 397 Md. 320, 327, 916 A.2d 1008, 1012 (2007).

probation, with conditions. But even if the sentencing term of the plea agreement as expressed at the plea proceeding was ambiguous (a point Petitioner concedes), he is entitled to have the ambiguity resolved in his favor. *See Solorzano,* 397 Md. at 673, 919 A.2d at 659 (any ambiguity in plea agreement must be resolved against the State).

We therefore hold that, regardless of whether the sentencing term is clear or ambiguous, the court breached the agreement by imposing a sentence that exceeded a total of eight years' incarceration. The sentence is illegal and, upon Petitioner's motion, the Circuit Court should have corrected it to conform to a sentence for which Petitioner bargained and upon which he relied in pleading guilty.

Our holding should not be interpreted as foreclosing a binding plea agreement that provides for a so-called "split sentence" like the sentence imposed in this case, that is, a sentence that exceeds the guidelines, with all of it suspended save for that portion of the sentence that falls "within the sentencing guidelines." To the contrary, such plea agreements are entirely permissible, *if,* as we noted in *Solorzano,* 397 Md. at 674 n. 2, 919 A.2d at 659 n. 2, either the State or defense counsel makes that term of the agreement absolutely clear on the record of the plea proceeding and the term is fully explained to the defendant on the record before the court accepts the defendant's plea.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE SENTENCE AND REMAND THE CASE TO THE CIRCUIT COURT FOR HARFORD COUNTY FOR RE–SENTENCING CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY HARFORD COUNTY.**

HARRELL, MURPHY, and ADKINS, JJ., dissent.

HARRELL, J., dissenting, which ADKINS, J., joins.

The Majority opinion claims, in reaching its conclusion, that it applies the principles of contract law. It only does so, however, where convenient. It seems to "cherry-pick" those principles that support its view of what the law *should* be, while discarding the remainder. This approach often leaves uncertainty where there was none before. Accordingly, I dissent.

## I.

Petitioner, Raymond B. Cuffley, Jr., was charged with one count of robbery, which carried a maximum sentence of fifteen years' incarceration. In exchange for pleading guilty, the State promised to ask for—and the court agreed to impose—a sentence that was "within the guidelines."[1] The parties concurred that such a sentence would be between four and eight years. At the plea hearing, the court confirmed these terms and made clear that "[a]ny conditions of probation [were still] entirely within [its] discretion." Accordingly, after ensuring that Petitioner's plea was knowing and voluntary, the court imposed a fifteen-year sentence, suspending all but six of those years in favor of a five-year probationary period. Thus, Cuffley was facing an immediate period of incarceration of up to six years and, were he to violate the terms of probation, possibly the back-up time.

This sentence, the Majority opinion says, was illegal. In reaching this conclusion, the Majority opinion begins by noting correctly that, for the most part, we apply the civil law of contracts to the interpretation of criminal plea agreements. *See* Majority op. at 579–80, 7 A.3d at 563–64. It also relies on Maryland Rule 4–243, which requires that " 'the defense counsel and the State's Attorney . . . advise the judge of the terms of the agreement . . .' " and that the court " 'embody . . . the

---

1. *See* Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual* (2001). The provisions of the Sentencing Guidelines relevant to the present case have remained unchanged since Cuffley entered his plea.

agreed sentence'" in its judgment. Majority op. at 581, 7 A.3d at 564–65. Finally, the Majority opinion states accurately that "the terms of a plea agreement are to be construed 'according to the reasonable understanding of the defendant when he pled guilty.'" Majority op. at 581, 7 A.3d at 564 (quoting *Solorzano v. State*, 397 Md. 661, 668, 919 A.2d 652, 656 (2007)).

Armed with these basic propositions, the Majority opinion then frames two broad penultimate conclusions. First, "Rule 4–243 requires strict compliance with its provisions." Majority op. at 582, 7 A.3d at 565. Consequently, in interpreting any plea agreement (be it oral or written), an appellate court may consider only what is said, on the record, at the plea hearing. *See id.* Second, in construing what were the terms of the plea agreement "according to the reasonable understanding of the defendant," *Solorzano* 397 Md. at 668, 919 A.2d at 656, we must consider what a "reasonable lay person in the defendant's position" would have thought them to be. Majority op. at 582, 7 A.3d at 565.

The Majority opinion concludes ultimately and unhesitatingly that "a reasonable lay person in [Cuffley's] position would not understand that the court could impose the sentence it did." Majority op. at 585, 7 A.3d at 567. Rather, he or she would have understood the word "sentence" to mean a *"total* sentence of no more than eight years, a portion of which the court in its discretion might suspend in favor of a period of probation, with conditions." *Id.* (emphasis added).

For reasons I shall explain, our pre-existing precedents supply us with a clear and narrow way to resolve this matter, without going where the Majority opinion goes. The Majority opinion, in my estimation, rewrites that precedent and creates a new analytical framework. Then, it applies that newly-installed framework incorrectly. As a result, formidable uncertainties are injected into our jurisprudence and the future operation of the criminal justice system.

## II.

In interpreting plea agreements in criminal law contexts, courts apply routinely contract law principles. When inter-

preting contracts, Maryland courts follow the objective approach. *See General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985); *Towson Univ. v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004). If contract language (be it oral or written) is clear and unambiguous, a court limits its interpretation to that language alone. *See Marr v. Langhoff*, 322 Md. 657, 667–68, 589 A.2d 470, 475 (1991); *Son v. Margolius*, 114 Md.App. 190, 212–13, 689 A.2d 645, 656 (1997), *rev'd on other grounds*, 349 Md. 441, 709 A.2d 112 (1998), *reconsideration denied*, (4 June 1998). It does not factor into the equation the actual intent of the parties. *See Kasten Constr. Co., Inc. v. Rod Enterprises, Inc.*, 268 Md. 318, 327–28, 301 A.2d 12, 17 (1973). If, however, the language of a written contract is unclear or ambiguous, a court may consider extrinsic, intent-related evidence. *See Brendsel v. Winchester Constr. Co.*, 392 Md. 601, 625–26, 898 A.2d 472, 486–87 (2006). In the case of an oral contract, if the existence of the contract or its terms is disputed, then, again a court may consider extrinsic evidence. *See Son*, 114 Md.App. at 212–23, 689 A.2d at 656.

Plea agreements, of course, implicate more than contract rights. As such, exclusive application of contract law is not appropriate. Rather, "[d]ue process concerns for fairness and the adequacy of procedural safeguards" also must guide a court's interpretation. *Solorzano*, 397 Md. at 668, 919 A.2d at 656. Nonetheless, "in an appropriate case," "[p]rivate law interpretive principles may be wholly dispositive." *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986).[2]

---

2. For example, in most cases, a court should be able to decide "whether a written [plea] agreement is ambiguous" on the basis of contract law alone. *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986). In other cases, however, "constitutional [or] supervisory concerns" must trump private law. *Harvey*, 791 F.2d at 300–01. That is, the strict application of contract principles should give way if necessary to protect a defendant's due process rights or promote the "effective administration of justice." *Harvey*, 791 F.2d at 300 (internal quotation marks and citations omitted); *see Solorzano v. State*, 397 Md. 661, 668, 919 A.2d 652, 656 (2007).

## III.

A. The Majority Opinion Reads Rule 4–243 Too Broadly.

The Majority opinion begins its analysis correctly by comparing the plea agreement in the present case to a contract. Usually, written contracts have four well-defined corners within which a court confines its analysis. The Majority opinion seeks to establish the four corners of this unwritten plea agreement by construction of Md. Rule 4–243. *See* Majority op. at 581, 7 A.3d at 564 ("The parties disagree ... about whether ... evidence outside the 'four corners' of the plea agreement itself[ ] may be considered....").

In particular, the Majority opinion reaches for two phrases. First, it recites a portion of sub-part (b) of the Rule, which states that "defense counsel and the State's attorney shall advise the judge of the terms of the agreement when the defendant pleads." It also turns to sub-part (c) for the requirement that a court "embody ... the agreed sentence" in its judgment. From these two phrases, the Majority divines that "the principal purpose of Rule 4–243 is to eliminate the possibility that the defendant may not fully comprehend the nature of the agreement before pleading guilty." Majority op. at 581, 7 A.3d at 565. Without more, the Majority then concludes that Rule 4–243 requires "strict compliance with its provisions," and that, as a result, "any question ... later aris[ing] concerning the meaning of the sentencing term of a binding plea agreement must be resolved by resort *solely* to the record established at the Rule 4–243 plea proceeding." Majority op. at 582, 7 A.3d at 565 (emphasis in original). I challenge how the Majority opinion leapfrogs from Rule 4–243 "requir[ing] recordation ... of the terms of the [plea] agreement," *State v. Poole,* 321 Md. 482, 498, 583 A.2d 265, 273 (1991), to "any question ... must be resolved by resort *solely* to the [plea hearing] record," Majority op. at 582, 7 A.3d at 565 (emphasis in original).

Rule 4–243 does not say that, in interpreting a plea agreement, a reviewing court may only consider the record of the plea hearing. Indeed, the Rule allows for a trial court to defer its decision on a plea agreement until pre-sentence

reports or investigations are conducted. *See* Rule 4–243(c). If these reports reveal, for example, a previously undisclosed criminal history, then the plea agreement may be altered at the sentencing hearing. *See id.* Is the Majority suggesting that a reviewing court could not consider the sentencing hearing record, if a dispute as to an agreement later arises? I think not; however, that is left unclear.[3] *But see Baines v. State,* 416 Md. 604, 623–28, 7 A.3d 578, 589–92 (2010) (Harrell, J., dissenting) (companion case, argued and decided at the same time as *Cuffley,* where the record of the sentencing hearing was consulted to help show that the parties had a common understanding as to the terms of a plea agreement).

B. The Majority Opinion Wrongly Transmutes "Reasonable Understanding of the Defendant" into "Reasonable Lay Person in the Defendant's Position."

After misreading Rule 4–243 to limit the scope of proper analysis, the Majority also transmutes (albeit subtly) our previous precedent, as explained in *Tweedy v. State,* 380 Md. 475, 482, 845 A.2d 1215, 1219 (2004), and *Solorzano,* 397 Md. at 668, 919 A.2d at 656. In *Tweedy,* we held that courts should construe plea agreement terms "according to what a defen-

---

3. In addition to misreading Rule 4–243's requirements, the Majority opinion also misinterprets its purpose. In *Poole v. State,* 77 Md.App. 105, 120 n. 7, 549 A.2d 417, 424 n. 7 (1988), *aff'd,* 321 Md. 482, 583 A.2d 265 (1991), the Court of Special Appeals held that one of the policies underlying Rule 4–243 is to "inject certainty into the criminal justice system." In affirming the intermediate court's decision, we added that "the policy underlying all of Rule 4–243 is to promote fair play and equity." *State v. Poole,* 321 Md. 482, 498, 583 A.2d 265, 273 (1991). According to the Majority opinion here, however, Rule 4–243 is much more one-sided. It is not about the justice system, or ensuring its fairness and impartiality; it is only about the defendant. Rule 4–243's "principal purpose . . . is to eliminate the possibility that the defendant may not fully comprehend the nature of the agreement before pleading guilty." Majority op. at 581, 7 A.3d at 565. That is more the province of Rule 4–242. In any event, under its own objective, "reasonable lay person" standard, see Part III.B, *infra,* the Majority opinion should have said Rule 4–243's "principal purpose . . . is to eliminate the possibility that [*a reasonable lay person in the defendant's position* ] may not fully comprehend . . . the agreement. . . . "

dant reasonably understood" when he or she pled guilty. 380 Md. at 482, 845 A.2d at 1219. In *Solorzano*, we held that courts should construe plea agreement terms "according to the reasonable understanding of the defendant" when he or she pled guilty. 397 Md. at 668, 919 A.2d at 656. Arguably, both of these standards are subjective, for they focus on the understanding of their *particular* defendants, rather than the understanding of other "reasonable lay person[s]...." Majority op. at 582, 7 A.3d at 565; *see Solorzano*, 397 Md. at 671, 919 A.2d at 658 (finding dispositive the fact that its "[defendant's] understanding was reasonable....").

By rearranging a few words, the Majority opinion seems to be applying an objective standard, as found in the objective law of contracts. Under that approach, courts construe a contract according to "what a reasonably prudent person in the same position would have understood as to [its] meaning...." *Cochran v. Norkunas*, 398 Md. 1, 17, 919 A.2d 700, 710 (2007). We never have held expressly, before now, that courts should apply this standard to plea agreements.[4] Although I agree that, where appropriate, courts should apply contract principles to plea agreements (including the objective law of contracts), if not for certainty's sake alone, I doubt whether this step in the Majority opinion's analysis was necessary because there are at least three other, narrower ways to resolve Cuffley's case. *See* Part IV, *infra*.

IV. The Majority Opinion Reaches the Wrong Conclusion Under Its Newly–Installed Analytical Framework

The trial court sentenced Petitioner to a period of actual incarceration and a period of probation. The question is whether Cuffley knew, or should have known, the court could impose the sentence it did.[5] Indeed, the sum and substance of

---

**4.** Thus, the State stood on solid ground in this case when it argued to this Court that "the appropriate inquiry [should be] first, what did the defendant in the case at bar understand; and second, was that understanding reasonable[.]"

**5.** The Majority opinion (and the parties) seem to get stuck in an artificial and technical view of how sentences are imposed. As a

the Majority opinion is that "[b]ased on [the plea hearing] record, a reasonable lay person in Petitioner's position would not understand that the court could impose the sentence it did." Majority op. at 585, 7 A.3d at 567. Even were we to assume, however, that (1) Rule 4–243 controls the scope of our analysis, as claimed by the Majority, (2) it limits that inquiry to the plea hearing record, and (3) the analytical standard to be applied is "a reasonable lay person in the [specific] defendant's position," the Majority opinion still reaches a legally unsound conclusion.

Assuming, without conceding, that the plea hearing is the sole source from which a court now may draw its conclusion, it behooves us to reconstruct its proceedings. There is not much controversy here—Petitioner agreed to plead guilty to one count of robbery. In exchange, the trial court promised to impose a sentence "within the guidelines," which was calculated to be "four to eight years." Moreover, the trial court made clear that "[a]ny conditions of probation [were still] entirely within [its] discretion." Accordingly, at the sentencing hearing, the court imposed a fifteen-year sentence, suspending all but six of those years in favor of a five-year

---

practical matter, when courts impose any period of probation, their language must (and should) be precise. *Costello v. State,* 240 Md. 164, 168, 213 A.2d 739, 741 (1965) ("Sentencing is a definite and objective matter...."). They must define the counters of that period of probation. To do so, they often say the sentence will be "X years, with all but Y years suspended." *Benedict v. State,* 377 Md. 1, 8, 831 A.2d 1060, 1064 (2003) (noting that if a defendant violates probation, the court "determines how much of the unserved part of the sentence [he or she] must serve in prison."); *Ridenour v. State,* 142 Md.App. 1, 7, 787 A.2d 815, 819 (2001) ("[A] lesser suspended period of years is carved out of the total sentence and is not executed."); *Rankin v. State,* 174 Md.App. 404, 410, 921 A.2d 863, 867, *cert. denied,* 400 Md. 649, 929 A.2d 891 (2007) ("[W]hen a trial court suspends a sentence, it will impose probation as a matter of course.").

Although precise, this legalistic language tends to confuse interpretive issues. To determine how a reasonable lay person would have understood his or her plea agreement, we ought to be more straightforward. Thus, in these circumstances, I think it better to discuss periods of incarceration and probation. After all, when reasonable lay persons negotiate plea agreement terms, they are not negotiating over non-suspended and suspended portions, but over incarceration and probation.

probationary period. Although not oft-cited by the parties (or the Majority opinion), it should also be noted that, at the plea hearing, Petitioner was advised that a guilty plea in a subsequent case may be seen as a violation of probation, and that such a violation could lead to additional incarceration. Thus, the court put Cuffley on notice that probation was possible.

On the basis of this record, the Majority opinion claims a reasonable person would not have known the court could impose the sentence it did. It is mistaken for at least three reasons.

A. The Parties Incorporated the Sentencing Guidelines by Reference.

To show that Cuffley and his counsel knew, or should have known, the court could impose the sentence it did, we must analyze separately the two components of the sentence—the period of actual incarceration and the period of probation. As I explain below, the principle of "incorporation by reference" accounts only for the period of actual incarceration, while the reasonable person standard (the topic of Part IV.B, *infra*) accounts for both periods. As such, I will discuss only the period of actual incarceration in this section, and both periods in the reasonable person section.

When an existing document is " 'incorporated by reference' into a subsequent contract, it simply means that the [existing] document is made a part of [that subsequent contract], as if the [existing] document were fully set forth therein." *Hartford Accident & Indem. Co. v. Scarlett Harbor Associates,* 109 Md.App. 217, 292, 674 A.2d 106, 142 (1996) (citing *Wheaton Triangle Lanes, Inc. v. Rinaldi,* 236 Md. 525, 531, 204 A.2d 537, 540 (1964)). Where incorporation by reference occurs, the existing documents and the contract "are to be read and construed together" as if they were one. *Bachmann v. Glazer & Glazer, Inc.,* 316 Md. 405, 415, 559 A.2d 365, 369–70 (1989). The documents and the contract, in other words, all figure into "what a reasonably prudent person in the same position would

have understood as to the meaning of the agreement." *Cochran*, 398 Md. at 17, 919 A.2d at 710.

In *Wheaton Triangle Lanes, Inc.*, two brothers owned multiple bowling businesses. 236 Md. at 527, 204 A.2d at 538. These businesses were all indebted to one another in varying amounts. *See id.* After a rift developed between them, the brothers decided to divide their ownership interests. *See id.* To that end, they drafted and signed a settlement agreement that, in part, would help them resolve those inter-business debts. *See id.* Afterward, the brothers also executed general releases; however, the inter-business debts were left intact. *See id.* For present purposes, it is relevant only that this Court construed the documents together because the general releases referenced the settlement agreement. *See Wheaton Triangle Lanes, Inc.* at 531, 204 A.2d at 540. It was enough that the later general releases said "the obligations assumed and the rights of indemnity arising out of the [earlier] settlement agreement should be fulfilled." *Wheaton Triangle Lanes, Inc.*, 236 Md. at 528, 204 A.2d at 538.

In the instant case, the plea hearing record shows that the participants all agreed to a sentence "within the guidelines." The State and defense counsel noted, on the record, that they computed jointly the proper Sentencing Guidelines range. ("[T]he State will recommend a sentence within the guidelines formulated by myself and Miss Casper[, defense counsel] . . . ."). Thus, it is clear the parties intended to (and did) incorporate the Maryland Sentencing Guidelines Manual into their negotiations and final agreement. As in *Wheaton*, it is enough that the parties referenced the Guidelines and stated that their agreed-upon recommended sentence arose directly out of it. Therefore, in construing this plea agreement, we should consider that the parties were not creating their own nuanced definition of the word "sentence," but rather were adopting the definition provided by the Guidelines.[6] The

---

**6.** The Majority opinion injects a large dose of uncertainty into the operation of the Guidelines in the criminal justice system. After today, parties in criminal cases will no longer know whether, and to what

Guidelines make clear that a sentence within its "range represents only non-suspended," or executed, time. Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual* § 8. 1, p. 36 (2001).[7]

---

extent, contract principles apply to plea agreements. That is because the Majority opinion contravenes basic principles of human interaction—that people mean what they say, and not some skewed version thereof that facilitates a later-arising strategic or tactical motive. When parties negotiate and develop an agreement, we ought to respect that process and enforce the terms of that agreement. Here, the parties used the Sentencing Guidelines as the context and foundation of their negotiations. More importantly, though, they did not pick and choose among its many provisions, but relied on the Sentencing Guidelines in its entirety. This was not an accident. To say, subsequently, that the Sentencing Guidelines do not control is to ignore the parties' express wishes, at the time of agreement, and injects uncertainty in future plea negotiations.

7. The *Cuffley* Majority opinion's footnote 5 (Majority op. at 582–83, 7 A.3d at 565) exaggerates a bit the weight and import to be accorded properly to its major "authority," footnote 2 of *Solorzano*, 397 Md. at 674 n. 2, 919 A.2d at 659 n. 2.

The *Solorzano* footnote, appearing at the very end of the Court's opinion, states in its entirety:

At oral argument, the question arose whether, if appellant were to be resentenced, a sentence of life, suspend all but twenty years, would conform with the twelve to twenty year sentence agreed upon between appellant and the State. The State argued that any portion of a sentence which is suspended is not considered when determining whether a sentence falls within the guidelines range. *See* Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual*, §§ 12. 1, p. 42 (2005) (stating that "[s]uspended time *is not* considered in determining whether the sentence falls within the recommended guidelines. The guidelines range represents only non-suspended time." (emphasis in original)). Whether a life sentence, suspend all but twenty years (carrying parole conditions not applicable to the twenty year sentence), is the same as a sentence of twelve to twenty years, was *not explicitly raised on appeal, and was not briefed by either party.* Nonetheless, appellant in the case *sub judice* was never advised by the trial court that he was facing a life sentence. Assuming, without deciding that the State is correct, if the State is relying on the guidelines provision, the State must make absolutely clear, on the record, that it is doing so, and the defendant must be fully advised as such. For these reasons, *we do not address the issue.*

397 Md. at 674 n. 2, 919 A.2d at 659 n. 2 (emphasis supplied).

The Majority opinion here claims that the *Solorzano* footnote stands for the following:

The law assumes that reasonable lay persons "contract mindful of the existing law," *Wright v. Commercial & Sav. Bank,* 297 Md. 148, 153, 464 A.2d 1080, 1083 (1983),[8] and that includes incorporation by reference. We need not rely on this more generic assumption here, however; the record shows that a "reasonable lay person in Petitioner's position" is one represented by counsel, and, in the criminal context, we presume that counsel discuss the details of a plea with their clients. *See State v. Priet,* 289 Md. 267, 290, 424 A.2d 349, 360–61 (1981) (presuming that counsel explained enough about the nature of the charge to make the plea voluntary); *Gilliam v. State,* 320 Md. 637, 652, 579 A.2d 744, 751 (1990) (citation omitted) (presuming that "where the accused has counsel . . . he has been informed of his rights," absent evidence to the contrary); *State v. Kenney,* 327 Md. 354, 363–364, 609 A.2d 337, 342 (1992) (citing *Priet* and *Gilliam* for the proposition that, when the defendant is represented, "it should be presumed that [the] counsel gave [the defendant] full advice of his options").

---

[T]his Court unanimously stated that, if the State, as part of a plea bargain, wished to rely on the *Guidelines Manual* provision that a "sentence" refers only to "non-suspended" time, then "the State must make absolutely clear, on the record, that it is doing so, and the defendant must be fully advised as such." Judge Harrell's dissent would, it appears, deviate from that guidance in *Solorzano.*

Majority op. at 583 n. 5, 7 A.3d at 565 n. 5 (internal citation omitted).

Beyond noting that what the Majority opinion sees as unanimous and guidance in this most obiter of dicta in the afterthought footnote in *Solorzano,* I observe that Cuffley agreed personally and explicitly on the record to a sentence "within the guidelines." The presence and assistance of competent counsel supports the conclusion that Cuffley did so purposefully. Taken together with the fact that he also agreed to a separate, distinct, and additional "conditions of probation," it is a fair, even unavoidable, determination that Cuffley knew the court could impose the sentence it did.

8. Therefore, "all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them . . . ." *Wright v. Commercial & Sav. Bank,* 297 Md. 148, 153, 464 A.2d 1080, 1083 (1983). This principles "embraces . . . those provisions which affect the validity, construction, discharge and enforcement of the contract." *Dennis v. Mayor and City Council of Rockville,* 286 Md. 184, 189–90, 406 A.2d 284, 287 (1979).

Thus, "incorporation by reference" accounts for the first component of the sentence, the period of actual incarceration. Moreover, as explained below, the reasonable person standard accounts for the second component, the period of probation (as discussed below). As a result, Cuffley knew, or should have known, that the court could impose the sentence it did.

B. The Majority Opinion's "Reasonable Person" Is Not Reasonable At All.

Aside from the principle of incorporation by reference, the Majority opinion is incorrect for a second reason—because its reasonable person is not reasonable at all. In concluding that Cuffley did not know, and had no reason to know, that the court could impose the sentence it did, the Majority opinion asserts that a "reasonable lay person" would have understood the word "sentence" to mean "total sentence," including probation. Majority op. at 585–86, 7 A.3d at 567. That is a conclusion I cannot accept. A reasonable lay person would have understood the word "sentence" to mean "prison sentence," and the word "probation" to mean "probation." thereby accounting for both parts of the disposition.

As part of our objective approach to contract interpretation, we enforce the "customary, ordinary, and accepted meaning" of contract language. *Walton v. Mariner Health of Md., Inc.*, 391 Md. 643, 660, 894 A.2d 584, 594 (2006) (internal quotation marks and citations omitted); *Cochran*, 398 Md. at 17, 919 A.2d at 710. The same is true, or ought to be, for plea agreements. *See Rankin v. State*, 174 Md.App. 404, 409, 921 A.2d 863, 866, *cert. denied*, 400 Md. 649, 929 A.2d 891 (2007) (holding that, where the terms of a plea agreement are in dispute, "[t]he words employed ... are to be given their ordinary and usual meaning, in light of the context within which they are employed." (internal quotation marks and citations omitted)); *United States v. Holbrook*, 368 F.3d 415, 420 (4th Cir.2004) *vacated*, 545 U.S. 1125, 125 S.Ct. 2934, 162 L.Ed.2d 863 (2005) (holding that, where the terms of a plea agreement are in dispute, "[w]e enforce a contract's plain

language in its ordinary sense." (internal quotation marks and citations omitted)).

Confining ourselves to the "four corners" of the plea hearing, the record shows that a "reasonable lay person" would have given the word "sentence" its "customary, ordinary, and accepted meaning"—a prison sentence. Put a different way, a "reasonable lay person" would *not* have viewed a common word like "sentence" in such an artificial and technical way, as the Majority and Cuffley (at least on appeal) do. Indeed, the Majority opinion would have us believe that if you approached any Marylander on the street and asked him or her to define the word "sentence," he or she would tell you it means a period of years, "a portion of which [a] court in its discretion might suspend in favor of a period of probation, with conditions." Majority op. at 585–86, 7 A.3d at 567. Because this word and its definition are so common, if the trial court meant something else, according to the Majority opinion, it should have said so. Majority op. at 585, 7 A.3d at 567 ("No mention was made . . . that the four-to-eight-year sentence referred to executed time only.").

I believe, rather, a reasonable person in the defendant's position—that is, a reasonable person standing before a court that holds his liberty in its hands—would fear the worst. When he hears the court say it is going to impose "a sentence somewhere within the guidelines," he would think that he is going to prison, right now, for a period of time within those Guidelines. He would not think, "It's okay, the judge was only telling me about my 'total exposure.' I still could get all probation in the end."

The conclusion that Cuffley knew "sentence" meant only "prison sentence" becomes even stronger when one considers the fact that the trial court informed Cuffley that probation was still within its discretion and a separate, "additional" penalty. Indeed, Cuffley heard the court reserve explicitly for itself, as part of the plea agreement, the power to include a period of probation. He heard, in other words, the court clearly draw a line between a sentence of incarceration and post-incarceration probation. Moreover, before tendering his

plea, Petitioner was advised that committing future crimes and/or pleading guilty to future criminal charges may result in probation violations and, thus, "additional penalt[ies]." As a result, he was on notice that a probation violation was an "additional penalty," which should not be confused with one's original sentence of incarceration.

Taken together, the record shows that a reasonable lay person in defendant's position would realize that "the court could impose the sentence that it did." Majority op. at 585, 7 A.3d at 567. Cuffley received exactly what he bargained for [9] —a prison sentence within the Guidelines, followed by a probationary period within the trial court's discretion. If he violates probation, he could face additional penalties.[10]

The Majority opinion dismisses the court's comments on probation, saying "a reasonable lay person in Petitioner's position *could* understand [them] to mean that the court reserved the right to suspend a part of what, at most, would be an eight-year sentence and impose a period of probation...." Majority op. at 585, 7 A.3d at 567 (emphasis added). For the reasons discussed above, I do not consider such an interpretation to be reasonable. Even if it is, however, it is of no moment—the question is not what a reasonable

---

**9.** Even if one considered that Petitioner misinterpreted the plea agreement terms and is not just asserting a case of buyer's remorse here, that would be of no moment because the terms are clear. We care only about what a reasonable lay person would have thought. If this Petitioner thought the agreement said something else, then he is simply mistaken, and a unilateral mistake "will not furnish a basis for relief"; "the party will be held to the objective meaning of the contract terms." *Creamer v. Helferstay,* 294 Md. 107, 128, 448 A.2d 332, 342 (1982).

**10.** These were the terms of the plea agreement. The agreement was not for, as the Majority opinion claims, a "total sentence" (including non-suspended and suspended time). There was no mention of Petitioner's "total sentence" or "total exposure." Rather, the agreement was for an actual sentence to be followed by a probationary period. Whether Petitioner would spend that period at home (as a probationer) or in prison (as a prisoner serving a suspended sentence) was a separate matter, determined solely by Petitioner's own, post-sentencing, choices.

lay person *could* have understood. The proper framing of the question is what a reasonable lay person *would* have understood.

C. The Majority Opinion Presumes that Finding Ambiguity Entitles Petitioner to Automatic Relief.

The Majority opinion posits that, if the plea agreement was ambiguous, Petitioner should prevail nonetheless. That is because concerns for due process and procedural safeguards require us, it asserts, to resolve that ambiguity against the State. *See id.* I agree that, in most cases, an ambiguous or unclear term requires us to hold the State to a higher standard. This is because constitutional and supervisory concerns, when implicated, override private law. *See* n. 2, *supra; Solorzano,* 397 Md. at 668, 919 A.2d at 656.

To say that the discovery of ambiguity, however, reflexively should end our analysis and result in the immediate award of relief to a defendant is incorrect. Granted, in most cases, ambiguities should be resolved against the State; but what of the case where "extrinsic evidence [shows] that the parties to an ambiguously worded plea agreement actually had agreed— or mutually manifested their assent to—a[ single] interpretation"? *Harvey,* 791 F.2d at 303. With today's Majority opinion, we preclude ourselves from ever discovering such a case. From this point forward, if we encounter ambiguity in a plea agreement, we will go no further. Instead, we will cage our analysis and accept the defendant's interpretation or, at least, one favorable to him or her. That is true even where, as here, there is a wealth of extrinsic evidence demonstrating a mutual manifestation of assent. It is also true where, as here, neither due process nor procedural safeguard issues are implicated. And it is true where, as here, equity would demand otherwise.

In my view, the terms of the plea agreement were clear— Cuffley agreed to a prison sentence within the guidelines, followed by a period of probation. If the terms were ambiguous, however, we should look first at the extrinsic evidence and ask whether, despite the ambiguity, the parties actually

*had* agreed to a single interpretation. If, and only if, the extrinsic evidence is not dispositive should we hold the State to a higher standard.

For the foregoing reasons, I would affirm the judgments of the Court of Special Appeals and the Circuit Court for Harford County.

Judge ADKINS authorizes me to state that she joins in the views expressed in this dissenting opinion.

MURPHY, J., dissenting.

I dissent from the holding that "upon Petitioner's motion, the Circuit Court should have corrected [the sentence that it imposed] to conform to a sentence for which Petitioner bargained and upon which he relied in pleading guilty." In the case at bar, it is obvious that the Circuit Court imposed a sentence that *it* considered to be "within the guidelines." It is also obvious that—because (1) Petitioner waited over four years to file his motion to correct that allegedly "illegal" sentence, and (2) Petitioner's trial counsel did not object to the sentence immediately after it was imposed—neither Petitioner nor his trial counsel initially thought that the sentence was prohibited by Md. Rule 4–243. Under these circumstances, I would not limit our review to what occurred "on the record" when Petitioner entered his plea, and would affirm the judgment of the Court of Special Appeals on the ground that the Circuit Court was not clearly erroneous in concluding that Petitioner "got exactly what he bargained for."

Moreover, if the majority is correct that we are required to limit our review to what occurred during the proceeding at which Petitioner entered his guilty plea, I would hold that there are two reasonable interpretations of the term "within the guidelines:" (1) the sentencing judge's interpretation that "within the guidelines" permitted the imposition of the maximum sentence, provided that the unsuspended portion of the sentence was not "above the guidelines," and (2) the majority's interpretation that no portion of the sentence could be above the guidelines. In my opinion, the fact that there are two

reasonable interpretations is of dispositive consequence to the issue of appropriate relief. Assuming that Petitioner is entitled to some relief, he is not entitled to the relief fashioned by the majority.

When the State and the defendant have entered into an agreement for a plea of guilty on condition that the State's Attorney will recommend a particular sentence, the defendant acquires an enforceable right to a joint submission of that agreement to the court, but the defendant does not acquire an enforceable right to the recommended sentence "unless the judge to whom the agreement is presented approves it." Md. Rule 4–243(c)(2). Although there should be a "meeting of the minds" among the prosecutor, the defense attorney, the defendant, and the trial court, there *must* be a "meeting of the minds" between the defendant and the trial court. Maryland Rule 4–242(c) prohibits the court from accepting a plea of guilty unless the defendant understands the consequences of the plea. If there is a misunderstanding between the defendant and the trial court with respect to the maximum sentence that can be imposed, until that misunderstanding is resolved, neither the defendant nor the trial court should be "bound" by the plea agreement.

In the case at bar, the record shows that the Circuit Court actually approved of an agreement that—in its mind—permitted the imposition of a fifteen-year sentence, with all but six years suspended on condition that Petitioner successfully complete a period of probation. If the majority is correct in its conclusion that our review must be limited to what occurred during the proceeding at which Petitioner entered his guilty plea, the record does not show the required "meeting of the minds." Because the Circuit Court never approved of an agreement in which—in Petitioner's mind—no portion of the sentence could be above the guidelines, Petitioner should be entitled to the relief available to a defendant whose plea agreement has been rejected.

Maryland Rule 4–243(c)(4), in pertinent part, provides:

Rejection of plea agreement. If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists in the plea of guilty or nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement.

A sentencing judge should not be required to impose a sentence that he or she never agreed to impose.

ADKINS, J., dissenting.

I respectfully dissent because I agree with both Judges Harrell and Murphy that Mr. Cuffley got the benefit of his bargain, and would affirm the Court of Special Appeals. I join both of their opinions.

I also agree with Judge Murphy that even if Cuffley were entitled to some relief, it would not be the relief ordered by the majority; rather Petitioner should be entitled to the relief available to a defendant whose plea agreement has been rejected.