*Tommy Garcia Bonilla v. State of Maryland*, No. 63, September Term, 2014, Opinion by Adkins, J.

**SENTENCING — MARYLAND RULES 4-243(c)(3) AND 4-345(a) — SENTENCES BELOW A BINDING PLEA AGREEMENT — ILLEGAL SENTENCES:** Maryland Rule 4-243(c)(3) provides that when a sentencing court approves a plea agreement, it must sentence the defendant in accordance with the terms of the agreement. If the sentencing court imposes a sentence below what the parties agreed to, and the State does not consent, the sentence is inherently illegal and subject to correction under Maryland Rule 4-345(a).

Circuit Court for Prince George's County
Case No.: CT89-1205B
Argued: March 9, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 63

September Term, 2014

TOMMY GARCIA BONILLA

v.

STATE OF MARYLAND

Harrell
Battaglia
Greene
Adkins
McDonald
Watts,
Cathell, Dale R. (Retired,
     Specially Assigned),

JJ.

Opinion by Adkins, J.

Filed: May 22, 2015

In Maryland, "[a]n illegal sentence is a sentence 'not permitted by law.'" *State v. Wilkins*, 393 Md. 269, 273, 900 A.2d 765, 767–68 (2006) (citation omitted). Pursuant to Maryland Rule 4-345(a), a "court may correct an illegal sentence at any time." This Court has "held that a sentence that *exceeds* the sentence to which the parties agreed as part of a plea agreement is an illegal sentence within the meaning of Rule 4-345(a)." *Cuffley v. State*, 416 Md. 568, 575 n.1, 7 A.3d 557, 561 n.1 (2010) (emphasis added) (citing *Dotson v. State*, 321 Md. 515, 521–22, 583 A.2d 710, 713 (1991)). In this case, we consider whether a sentence is illegal under Rule 4-345(a) when a sentencing court imposes a sentence *below* the sentence agreed to in a binding plea agreement[1] without the State's consent.

## FACTS AND LEGAL PROCEEDINGS

In 1989, a Prince George's County grand jury indicted Petitioner, Tommy Garcia Bonilla, on two counts of first degree murder and several other serious crimes. Count I of the indictment charged Bonilla with the first degree murder of Jose Lozano, and Count III charged Bonilla with the first degree murder of Ruth Vasquez.

At an August 28, 1990 hearing in the Circuit Court for Prince George's County, Bonilla pleaded guilty to Counts I and III pursuant to a binding plea agreement with the State.[2] This agreement provided that Bonilla would, if called by the State, testify truthfully against one of his co-defendants, Freddy DeLeon, and would plead guilty to Counts I and

---

[1] Throughout this Opinion, we use "binding plea agreement" to refer to a plea agreement the court has approved pursuant to Maryland Rule 4-243(c).

[2] We shall refer to Bonilla and the State collectively as the "Parties."

III.  In exchange, the State agreed that Bonilla would receive a sentence of life imprisonment on Count III with a consecutive sentence of life imprisonment, with all but 20 years suspended, on Count I.  The State further agreed that it would withdraw its notice of intent to seek a sentence of life without the possibility of parole and would enter a *nolle prosequi* to the remaining counts in the indictment.  This was presented to the judge as a proposed binding plea agreement.  After a proffer of facts by the State,[3] the hearing judge determined that Bonilla was knowingly and voluntarily pleading guilty and accepted his guilty pleas.  The hearing judge then approved the plea agreement—stating on the record that he was "bound" by its terms—and postponed sentencing until after DeLeon's trial.

On February 20, 1991, having fulfilled his obligation to testify truthfully against DeLeon, Bonilla appeared before the Circuit Court for sentencing.  When outlining the sentencing terms of the plea agreement, defense counsel reversed the terms—incorrectly stating that the Parties agreed to a sentence of life imprisonment on Count I and a

---

[3] The Court of Special Appeals summarized the proffered facts to which Bonilla admitted:

> 1) [A]bout one month before the murders of Mr. Lozano and Ms. Vasquez, [Bonilla] and [DeLeon] formed a plan; 2) the plan was to enter apartment No. 508, located at 1802 Metzerott Road, in Prince George's County, to kill whomever they found there and to steal cocaine that they believed to be in the apartment; 3) on April 14, 1989, Bonilla and DeLeon entered apartment 508, ransacked it, and stole the cocaine and jewelry they found in the apartment; 4) while in the apartment, DeLeon, using a 9 mm handgun, shot Jose Lozano once in the back of the head, killing him instantly; and 5) after Mr. Lozano was killed, Bonilla, using a 38 caliber handgun, killed Ruth Vasquez by shooting her once in the chest.

*Bonilla v. State*, 217 Md. App. 299, 301, 92 A.3d 595, 596 (2014), *cert. granted*, 440 Md. 114, 99 A.3d 778 (2014).

consecutive sentence of life imprisonment, with all but 20 years suspended, on Count III. The State did not recognize this error and agreed with the sentence presented by defense counsel. Consistent with the Parties' representations, the court sentenced Bonilla to life imprisonment on Count I and a consecutive sentence of life imprisonment, with all but 20 years suspended, on Count III.

Over two decades later, on November 7, 2011, Bonilla filed a Motion to Correct Illegal Sentence and Motion for Credit Against Time Spent in Custody, arguing that his sentence on Count I was illegal because it "exceed[ed] the sentence agreed upon by the parties under the terms of the binding plea agreement." In response, the State filed a Motion to Correct the Entire Sentence, contending that the sentences on Count I *and* Count III were illegal because they deviated from the binding plea agreement. On February 7, 2012, the Circuit Court issued a Memorandum and Order, concluding that the sentences on both counts were illegal and ordering a resentencing "in accordance with the original plea agreement." At the resentencing hearing, the Circuit Court resentenced Bonilla to life imprisonment on Count III and a consecutive sentence of life imprisonment, with all but 20 years suspended, on Count I. Bonilla appealed.

In a reported opinion authored by Judge Salmon, the Court of Special Appeals affirmed the judgment of the sentencing court, agreeing that Bonilla's original sentence on Count III was illegal because it was below the binding plea agreement. *Bonilla v. State*, 217 Md. App. 299, 92 A.3d 595 (2014), *cert. granted*, 440 Md. 114, 99 A.3d 778 (2014). Bonilla petitioned for writ of certiorari, which this Court granted to answer the following question:

Did the Court of Special Appeals err by affirming the Circuit Court's judgment that a sentence below a binding plea agreement constitutes an illegal sentence [within the meaning of Rule 4-345(a)]?

Because we answer no, we shall affirm the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

We review the legal issue of the sentencing in this case as a matter of law. *See Cuffley*, 416 Md. at 581, 7 A.3d at 564 ("Whether a trial court has violated the terms of a plea agreement is a question of law, which we review de novo."); *Blickenstaff v. State*, 393 Md. 680, 683, 904 A.2d 443, 445 (2006) ("We shall address the legal issue of the sentencing in the case at bar under a *de novo* standard of review.").

## DISCUSSION

### Whether A Sentence Below A Binding Plea Agreement Is "Inherently Illegal" Within The Meaning Of Rule 4-345(a)?

We begin by briefly defining what constitutes an illegal sentence under Rule 4-345(a). For a sentence to be illegal within the meaning of Rule 4-345(a) "the illegality must inhere in the sentence itself, rather than stem from trial court error during the sentencing proceeding." *Matthews v. State*, 424 Md. 503, 512, 36 A.3d 499, 505 (2012). Accordingly, "we have denied relief pursuant to Rule 4-345(a) because the sentences imposed were not *inherently illegal*, despite some form of error or alleged injustice." *Id.* at 513, 36 A.3d at 505 (emphasis added).

Bonilla argues that his original sentence on Count III was legal under Rule 4-345(a) because it was the product of an "error in pronouncement" and was not inherently illegal. The State, concurring there was error, disagrees that the sentence was legal, arguing that

4

"*any* sentence imposed in violation of a binding plea agreement constitutes an inherently illegal sentence, whether a sentence exceeds or falls below the plea agreement." To resolve this dispute, we turn first to Maryland Rule 4-243(c)(3)—the Rule that governs a sentencing court's obligations when imposing a sentence pursuant to a binding plea agreement.

Rule 4-243(c)(3) now provides, as it did in 1991 when Bonilla was first sentenced, that when "[a] plea agreement is approved, the judge *shall embody in the judgment the agreed sentence*, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement." (Emphasis added.) In this case, Rule 4-243(c)(3) required the sentencing court to impose the sentencing terms in the binding plea agreement, and the Parties had agreed to a sentence of life imprisonment on Count III—not the lower sentence of life imprisonment, with all but 20 years suspended, that the sentencing court imposed. The State never consented to this lower sentence.[4] Because the Maryland Rules "have the

---

[4] During the sentencing hearing, the State made it clear that it would not consent to a sentence below the binding plea agreement:

> This is a[ binding] plea and I want to make the record clear. There has been no discussion nor any agreement by the State of any reconsideration.

> The law in 24 states, as it stands right now, is that if the Court, the defendant, and State enter into a[ binding plea] agreement that sentence will not be changed unless there's consent by all three parties.

> *The State does not consent to that nor does it expect to.*

5

force of law," *Dotson*, 321 Md. at 523, 583 A.2d at 714 (citation omitted), the sentencing court committed legal error when it deviated from the plea agreement by imposing a lower sentence on Count III. This does not end our inquiry, however, because in order to determine whether the original sentence on Count III was illegal under Rule 4-345(a), we must resolve whether the sentencing court's error rendered the sentence inherently illegal.

In *Dotson* and *Cuffley*, we considered whether a sentence is inherently illegal within the meaning of Rule 4-345(a) when a sentencing court violates Rule 4-243(c)(3) by imposing a sentence that exceeds the binding plea agreement. In *Dotson*, the defendant pleaded guilty to two counts of sexual offense in the second degree, and the trial court, pursuant to a plea agreement that it approved, sentenced him to concurrent sentences of 15 years imprisonment for each conviction. 321 Md. at 519–20, 583 A.2d at 712. The defendant moved for reconsideration of his sentence by a review panel. *Id.* at 520, 583 A.2d at 712. The panel vacated the trial court's sentence and imposed a sentence of 15 years on each conviction to run consecutively rather than concurrently—thereby increasing the sentence from 15 to 30 years. *Id.* at 521, 583 A.2d at 713. The defendant appealed, arguing that the sentence imposed by the review panel was illegal. *Id.*

We agreed that the review panel's sentence was illegal, emphasizing that Rule 4-243(c)(3) required the trial judge to sentence the defendant in accordance with the plea

---

(Emphasis added.) The State only requested a sentence of life imprisonment, with all but 20 years suspended, on Count III because that was the sentence defense counsel mistakenly requested at the beginning of the sentencing hearing. The language quoted above demonstrates that the State never consented to a sentence below the binding plea agreement.

agreement: "When the judge accepted the pleas, the agreement as to punishment came into full bloom; it stood approved by the judge. Thereafter, the agreement was inviolate, and the judge was required under the dictate of Rule 4-243(c)(3) to embody in the judgment the agreed sentence." *Id.* at 523, 583 A.2d at 714. Because "[o]ur rules have the force of law," we determined that Rule 4-243(c)(3) dictated that the 15-year sentence provided in the plea agreement was the maximum sentence "allowable by law." *Id.* (citation omitted). Thus, we reasoned, the review panel's sentence was inherently illegal because it exceeded the plea agreement.[5] *Id.* at 524, 583 A.2d at 714.

Over a decade later, in *Cuffley*, we again considered whether a sentence that exceeds the terms of a binding plea agreement is illegal. Cuffley pleaded guilty to robbery pursuant to a plea agreement under which the State agreed to a guidelines sentence of four to eight years. *Cuffley*, 416 Md. at 573–74, 7 A.3d at 560. After ensuring that Cuffley was knowingly and voluntarily entering the plea, the hearing court accepted the plea agreement pursuant to Rule 4-243(c) and bound itself to its terms. *Id.* at 574, 7 A.3d at 560. At the ensuing sentencing hearing, the court imposed a sentence of 15 years imprisonment with all but six years suspended. *Id.*

---

[5] Although *Dotson* did not explicitly address Rule 4-345(a), in *Cuffley v. State*, we confirmed that *Dotson* stands for the proposition that when a sentencing court violates Rule 4-243(c)(3) by imposing a sentence that exceeds a binding plea agreement, the sentence is inherently illegal under Rule 4-345(a). *See* 416 Md. 568, 575 n.1, 7 A.3d 557, 561 n.1 (2010) ("We have held that a sentence that exceeds the sentence to which the parties agreed as part of a plea agreement is an illegal sentence within the meaning of Rule 4-345(a)." (citing *Dotson v. State*, 321 Md. 515, 521–22, 583 A.2d 710, 713 (1991))).

7

Cuffley filed a Rule 4-345(a) motion, contending that his sentence was illegal because it exceeded the maximum sentence of eight years to which the court had bound itself. *Id.* at 574–75, 7 A.3d at 561. The sentencing court denied the motion, concluding that it had discretion to suspend time, this discretionary power was "alluded to" at the plea hearing, and Cuffley "got exactly what he bargained for." *Id.* at 576, 7 A.3d at 561. We disagreed. After emphasizing that Rule 4-243(c)(3) "mandates that the court, upon accepting and approving the agreement, '*shall* embody in the judgment the agreed sentence,'" *id.* at 581, 7 A.3d at 565 (emphasis in original), we explained that "by its express terms, Rule 4-243 requires strict compliance with its provisions," *id.* at 582, 7 A.3d at 565. We then applied Rule 4-243(c)(3) to Cuffley's plea agreement to conclude that because the sentencing court "breached the agreement by imposing a sentence that exceeded a total of eight years' incarceration[,] [t]he sentence [was] illegal." *Id.* at 586, 7 A.3d at 567.

Two years after *Cuffley*, in *Matthews v. State*, we further elaborated on our conclusions in *Cuffley*. We explained that "*Cuffley* adhered to our precedent limiting relief pursuant to Rule 4-345(a) to challenges to *inherently illegal* sentences." *Matthews*, 424 Md. at 517, 36 A.3d at 508 (emphasis added). We emphasized that because Cuffley's sentence varied from the sentence the court was required to impose pursuant to Rule 4-243(c)(3), "the sentence was not merely the product of procedural error; rather it was *inherently illegal* and thereby subject to correction under Rule 4-345(a)." *Id.* at 518, 36 A.3d at 508 (emphasis added); *see also id.* at 517, 36 A.3d at 507 ("We viewed the illegality [of Cuffley's sentence] as *inhering in the sentence itself*; the sentence, in other words, was

8

not merely the product of procedural or trial court error." (emphasis added) (footnote omitted)).

As Bonilla recognizes, the sentences this Court declared inherently illegal in *Dotson* and *Cuffley* exceeded the plea agreements. Neither our reasoning nor our holdings in those cases, however, suggest that striking a sentence as illegal can only occur when a sentence exceeds the terms of a binding plea agreement. In both cases, we determined that the sentences were illegal because the sentencing courts violated Rule 4-243(c)(3) by *deviating* from the binding plea agreements. *See Dotson*, 321 Md. at 523, 583 A.2d at 714 ("[T]he judge was required under the dictate of Rule 4-243(c)(3) to embody in the judgment the agreed sentence."); *Cuffley*, 416 Md. at 581–82, 7 A.3d at 565 (Rule 4-243(c)(3) mandates that after accepting a plea agreement, the court "*shall* embody in the judgment the agreed sentence" and "Rule 4-243 requires strict compliance" (emphasis in original)).

*Chertkov v. State*, 335 Md. 161, 642 A.2d 232 (1994) is also instructive because it not only bolsters our broad reading of *Dotson*, but also addresses whether a sentence is inherently illegal under Rule 4-345(a) when a sentencing court violates Rule 4-243(c)(3) by imposing a sentence below a binding plea agreement. In that case, the defendant negotiated a plea agreement with the State that provided for concurrent three-year terms of incarceration with all but 179 days suspended. *Id.* at 164, 642 A.2d at 233. The Circuit Court for Montgomery County approved the plea agreement and sentenced the defendant in accordance with its terms. *Id.* at 165, 642 A.2d at 234. The defendant filed a motion for reconsideration of the sentence, requesting that the sentencing court strike the findings of guilt and impose probation before verdict pursuant to Maryland Code (1957, 1992 Repl.

9

Vol.), Article 27, §641. *Id.* Over the State's objection, the court granted the relief requested, and the State appealed. *Id.* The Court of Special Appeals reversed the Circuit Court, concluding that the State was entitled to appeal and determining that a trial court had no authority to modify a sentence imposed pursuant to a binding plea agreement. *Id.* at 165–66, 642 A.2d at 234.

We dismissed the appeal, concluding that the State had no right to appeal the trial court's modification of the sentence. *Id.* at 163, 175, 642 A.2d at 233, 239. Although we recognized that our decision to dismiss the appeal would ordinarily end our inquiry, we stated that because "[p]lea bargaining is a significant, if not critical, component of the criminal justice system," *id.* at 170–71, 642 A.2d at 237 (citation omitted), we would "express our views concerning whether a binding plea agreement precludes a trial court from modifying a sentence imposed pursuant to it," *id.* at 171, 642 A.2d at 237. After reciting the pertinent provisions of Rule 4-243 and reviewing our decision in *Dotson*, we concluded that Rule 4-243(c)(3) prohibits a sentencing court from imposing a sentence *below* a binding plea agreement if the parties do not agree to the deviation:

> Subsection (c)(2)[6] makes clear that until the trial judge approves a plea agreement, it is not binding on the court. Conversely, and necessarily, when the court does approve a plea agreement, because it is required that the sentence or disposition it contemplates must be embodied in the court's

---

[6] Maryland Rule 4-243(c)(2) provides, as it did at the time of our decision in *Chertkov*:
> *Not Binding on the Court.* The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

*See also Chertkov v. State*, 335 Md. 161, 171, 642 A.2d 232, 237 (1994).

> judgment, it is. **Indeed, the court may impose a disposition more favorable to the defendant only if the parties agree.**

*Id.* at 172, 642 A.2d at 237 (emphasis added) (internal citation omitted). We determined that *Dotson* supports the conclusion that sentences below binding plea agreements are illegal:

> From *Dotson* and Rule 4-243(c)(3), it is clear that a court that binds itself to fulfill the plea agreement thereby relinquishes his or her right to modify the sentence, thereby imposed, absent the consent of the parties, *and, in particular, in the case of reducing the sentence, absent the consent of the State*.

*Id.* at 174–75, 642 A.2d at 239 (emphasis added).

Considering *Dotson*, *Cuffley*, *Matthews*, and *Chertkov*, we conclude that when a sentencing court violates Rule 4-243(c)(3) by imposing, without consent, a sentence that falls below a binding plea agreement, the resulting sentence is inherently illegal under Rule 4-345(a). Thus, in this case, because the original sentence on Count III was below the binding plea agreement and the State did not consent to this deviation, the sentence was inherently illegal and subject to correction under Rule 4-345(a).

### Preserving Fairness, Equity, And Certainty

Sound policy also supports our foregoing conclusion. Bonilla argues that "[b]ecause Rule 4-345(a) permits the correction of an illegal sentence at any time, the definition of an illegal sentence [should be] construed narrowly in the interests of predictability, finality, and judicial economy." We do not agree that narrowly construing Rule 4-345(a) to conclude that sentences below binding plea agreements are legal would

11

advance judicial economy. Such interpretation, moreover, would require us to ignore the principles of fairness and equity and undermine the certainty that plea agreements provide.

In *Cuffley*, we confirmed that "fairness and equity govern the enforcement of plea agreements." 416 Md. at 580, 7 A.3d at 564 (citing *State v. Brockman,* 277 Md. 687, 698, 357 A.2d 376, 383 (1976)). As such, when the State and a defendant have entered a binding plea agreement, each party is entitled to the benefit of its bargain. Concluding that sentences below binding plea agreements are legal under Rule 4-345(a) would be unfair to the State by depriving it of the benefit of its bargain. For example, in this case, the State agreed to withdraw its notice of intent to seek a sentence of life without the possibility of parole[7] and enter a *nolle prosequi* to several counts on the indictment. In exchange, Bonilla agreed, among other actions, to plead guilty to Count III and accept a sentence of life imprisonment. It would be unfair and inequitable to prevent the State from challenging the original, overly low, sentence on Count III when it bargained for a higher sentence, particularly after Bonilla had sought and obtained a reduction of the overly high sentence on Count I.

For us to conclude that sentences below binding plea agreements are legal would undermine the certainty that plea agreements provide. "It is well documented that plea [agreements] play a crucial role in the system of criminal justice in Maryland and throughout the United States." *Cuffley*, 416 Md. at 577, 7 A.3d at 562. Plea agreements

---

[7] During the sentencing hearing, the State explained that agreeing not to pursue a sentence of life without the possibility of parole represented a large "break" for Bonilla because first degree murder "is the type of crime . . . that merits that kind of punishment."

play a crucial role in our criminal justice system because they provide certainty.  *See Dotson*, 321 Md. at 518, 583 A.2d at 711 (citation omitted).  In *Dotson*, we explained that determining that the review panel's sentence, which exceeded the plea agreement, was legal would "violate the sanctity of the plea agreement process" and undermine the certainty that plea agreements provide.  *Id.* at 524, 583 A.2d at 714 (citation omitted).  Concluding that a sentence below a binding plea agreement is legal would also undermine this certainty.

The State and defendants would be discouraged from entering plea agreements if they could not be certain that sentencing courts will comply with binding plea agreements.  In *Dotson*, we warned that "[i]f a defendant could not rely upon the plea bargain, the chilling effect upon the very institution of plea bargaining would be devastating."  *Id.*  This "chilling effect" is not limited to violations of plea agreements that prejudice the defendant:

> Just as a defendant would be loathe to participate in plea bargaining if he or she could not be certain that the bargain that he or she made would be fulfilled, so too would the State. **There would be no incentive for the State to engage in plea bargaining if it were possible for a defendant to enter into a binding plea agreement only to have the sentence contemplated by that agreement modified a short time later.**

*Chertkov*, 335 Md. at 174, 642 A.2d at 238–39 (emphasis added); *see also Sweetwine v. State*, 42 Md. App. 1, 12, 398 A.2d 1262, 1269 (1979) ("If the prosecutor cannot rely upon the plea bargain, the potential 'chilling effect' upon the very institution of plea bargaining could be devastating."), *aff'd*, 288 Md. 199, 421 A.2d 60 (1980).

Discouraging the State or the defendant from entering plea agreements would have wide-ranging adverse effects because by promoting finality, certainty, and judicial economy, "plea agreements benefit the courts, the prosecution, the defendant, the victim, and the general public." *Dotson*, 321 Md. at 518, 583 A.2d at 711. Because "plea agreements account for the disposition of an overwhelming percentage of all criminal cases," they "prevent[], or at least reliev[e], the overcrowding of our courts." *Id.* at 517, 583 A.2d at 710–11 (citations and internal quotation marks omitted). By terminating charges, plea agreements

> lead[] to [the] prompt and largely final disposition of most criminal cases; . . . avoid[] much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; . . . protect[] the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, . . . enhance[] whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

*Id.* at 517, 583 A.2d at 711 (second alteration in original) (citation and internal quotation marks omitted). Moreover, "plea agreements eliminate many of the risks, uncertainties and practical burdens of trial, permit the judiciary and prosecution to concentrate their resources on those cases in which they are most needed, and further law enforcement by permitting the State to exchange leniency for information and assistance." *Id.*

Plea agreements are so beneficial that "within reason, [they] should be encouraged." *Id.* Concluding that sentences below binding plea agreements are legal would have the opposite effect—it would discourage plea agreements by reducing the incentive for the State to enter them. This result should be avoided.

14

**CONCLUSION**

In conclusion, we hold that when a sentencing court violates Rule 4-243(c)(3) by imposing a sentence below a binding plea agreement without the State's consent, the sentence is inherently illegal and subject to correction under Rule 4-345(a). Accordingly, we affirm the judgment of the Court of Special Appeals.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**