*Stephanie L. Smith v. State of Maryland*, No. 80, September Term, 2016. Opinion by Greene, J.

**BINDING AGREEMENTS—PLEA AGREEMENTS—PARTIES' CONSENT— ILLEGAL SENTENCE:**

The Court of Appeals reaffirmed that under Maryland law a sentencing court may not impose a sentence below a binding plea agreement, unless the parties agree to the modification. *See Bonilla v. State*, 443 Md. 1, 15, 115 A.3d 98, 106 (2015). The terms of the plea agreement reached by the State and the defendant clearly did not include probation before judgment, nor did the plea agreement allow for home detention. Once the sentencing judge accepted the terms of the plea agreement and agreed to be bound by the plea agreement he could only deviate from those terms with the permission of both parties, and the State did not consent to the deviation. Accordingly, the Court affirmed the judgment of the Court of Special Appeals.

Circuit Court for Prince George's County
Case No. CT151085X
Argued: May 4, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 80

September Term, 2016

_____

STEPHANIE L. SMITH

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.

_____

Filed: June 22, 2017

In this case, the petitioner, Stephanie L. Smith ("Ms. Smith"), entered into a plea agreement with the State. The terms of the agreement included that Ms. Smith would enter a plea of guilty to the crime of theft and that she would serve jail time. At the guilty plea proceeding, the sentencing Circuit Court accepted the terms of the agreement, binding itself to the agreement. However, the judge imposed a sentence below the terms of the plea agreement by sentencing Ms. Smith to probation before judgment, not finding her guilty of theft, and ordering home detention, rather than actual jail time. Moreover, this was done without the consent of the State. We shall hold that the more lenient sentence in this case was not consistent with the terms of the binding plea agreement and was without the consent of the State; thus, it was an illegal sentence. *Bonilla v. State*, 443 Md. 1, 15, 115 A.3d 98, 106 (2015) (holding "that when a sentencing court violates Rule 4–243(c)(3) by imposing a sentence below a binding plea agreement without the State's consent, the sentence is inherently illegal and subject to correction under Rule 4–345(a)"). Accordingly, we shall affirm the judgment of the Court of Special Appeals. *State v. Smith*, 230 Md. App. 214, 146 A.3d 1189 (2016).

## FACTUAL AND PROCEDURAL BACKGROUND

### Indictment

On September 10, 2015, Ms. Smith was indicted by a Grand Jury for Prince George's County, on various theft charges for making fraudulent insurance claims, including a charge of theft of property with a value of at least $10,000 but less than $100,000. Under Md. Code (2002, 2012 Repl. Vol.), Criminal Law Article ("CR"), § 7–

104(g)(ii), the maximum penalty for this violation is imprisonment not exceeding 15 years, a fine not exceeding $15,000, or both.

## Plea Bargain

A month after the indictment, Ms. Smith, her counsel, and the State began plea negotiations. Eventually the parties reached a plea agreement. Ms. Smith agreed to plead guilty to the primary theft charge. In exchange, Ms. Smith was guaranteed a sentence not to exceed 5 years of incarceration. Further, with respect to actual jail time, the 5 year sentence would be suspended except for 30 to 90 days of incarceration, followed by 5 years of supervised probation. Moreover, she would not have to pay a fine. As part of the agreement, the State would not seek the maximum sentence of incarceration up to 15 years and a fine up to $15,000. However, ultimately, there would be a conviction on Ms. Smith's record and a requirement that she pay $47,460.02 restitution to the victims of the theft.

Pursuant to Md. Rule 4–243, plea agreements may be binding on the court. The binding agreement required the approval of the judge.[1]

## Guilty Plea Hearing

On January 5, 2016, before a judge of the Circuit Court for Prince George's County, the State called the case for a hearing on Ms. Smith's acceptance of the guilty plea. The

---

[1] Subsection 4-243(a)(1)(F) provides that "the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration." Subsections (c)(2) and (3) provide that the proposed plea agreement is only binding once the judge approves it; once the judge does this, it is binding on the judge: "(3) Approval of plea agreement. If the agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement."

State presented the judge with the terms of the agreement that had been reached between the parties:

> [PROSECUTOR]: It would be a plea to Count 1, which is theft scheme greater than $10,000 but less than $100,000. In exchange for the guilty plea, there is a ceiling and a floor. The State would be allowed to argue for 5 years, suspend all but 90 days, 5 years supervised probation, and restitution in the amount of $47,460.02.
> THE COURT: $47,000.
> [PROSECUTOR]: $460.02. And the defense [is] free to argue for as little as 5 years, suspend all but 30 days, followed by 5 years supervised probation and also the restitution in the $47,460.02.
> [DEFENSE COUNSEL]: [Prosecutor], didn't we talk about I can ask for weekends?
> [PROSECUTOR]: That is correct. The defense is free to argue that she serve weekends. But, no, we didn't talk about home detention, just weekends.

The State agreed to enter a *nolle prosequi* to the remaining counts in exchange for Ms. Smith's guilty plea to the top count. The judge informed the defense that the court could impose up to 15 years of incarceration notwithstanding the agreement. The State then clarified that the parties were anticipating that the court would bind itself to the terms they had agreed to:

> THE COURT: All right. Now, before I can accept your plea, I have to be satisfied that the State actually has a factual basis for this, that they are not whistling in the wind, that there are basic elements that they would have proven if the matter had gone to trial. Have a seat. Get yourself together. Listen to what [the prosecutor] says the State would have proven had this matter gone to trial.
> [PROSECUTOR]: Your Honor, thank you. Just briefly, before that I have a housekeeping matter. I would like to add that despite the range, the 90 and 30 days, it is contemplated this would be a binding plea, therefore, it can only be modified in the future if both parties agree.
> THE COURT: Are you saying that if the Defendant is sentenced within the parameters of—first of all, are you asking the Court to bind itself to the 5-year cap?
> [PROSECUTOR]: To the range.
> THE COURT: 90-day cap.

[PROSECUTOR]: Yes, sir.

THE COURT: Or 30-day cap.

[PROSECUTOR]: Yes.

THE COURT: I have to hear the facts before I'm willing to do that. Okay, number one. And number two, are you saying that the Defendant is prohibited from asking for reconsideration?

[PROSECUTOR]: No. They are not prohibited from asking. But before the motion can be granted, both sides would have to agree.

At this point the judge conditionally agreed to be bound by the terms of the agreement subject to some unforeseen issue in the subsequent statement of supporting facts. The judge explained to Ms. Smith the limits on the sentence that the plea bargain had imposed and that he was prepared to follow them. The terms that the judge announced and that Ms. Smith accepted were:

THE COURT: Okay, I see. Ms. Smith, the [State] is asking me to bind myself so I won't give you any more than 90 days jail time. So since that's coming from the State, that's certainly something that I will consider.

The defense always wants the Court to bind itself to a fixed amount of time. Your attorney is asking for 30 days. Naturally, if I did accept this plea, I would take the higher amount, the 90 days. The other thing, in other words, 5 years suspend all but 90 days. You get 5 years but the most I could actually give you in terms of jail time at this time would be 90 days. But if you mess up on probation, because that's going to be 5 years, then the hammer falls and you get up to 5 years in prison. Do you understand that, ma'am?

[SMITH]: Yes.

Next, the State gave the court the factual basis and summary of the evidence offered for the plea. Ms. Smith agreed to the accuracy of the statement. After the judge confirmed that Ms. Smith had no prior criminal convictions and that no unexpected development would cause the judge not to go forward with the sentencing limitations, he formally bound himself to the agreement.

THE COURT: That's helpful to know given that I will accept this as an ABA plea. Which means, Ms. Smith, I agree to sentence you within the ranges

- 4 -

recommended by the attorneys. You want to explain that to her, [defense counsel], if that needs any explanation.

In other words, ma'am, I'm not going to give you 15 years. The maximum penalty that I'm going to give you is 5 years. And I will suspend either all but 90 days or maybe 30 days. I will consider weekends, but not necessarily weekends. But I will order restitution in the amount of $47,460.02. You will be on 5 years supervised probation and the main condition of that probation is that you pay this money back.

Ms. Smith agreed to this: "THE COURT: Knowing that, ma'am, how do you wish to plead, guilty or not guilty? [SMITH]: Guilty." The judge also expressly agreed:

THE COURT: The Court is satisfied the State has provided an adequate factual basis for me to accept [Smith]'s plea of guilty. I find that her plea of guilty is freely, voluntarily made and with understanding of what she is doing. And the Court accepts her guilty plea and finds you guilty, ma'am, of Count 1 of the indictment in this case.

The court then turned to the imposition of the sentence and considered Ms. Smith's personal circumstances, which were relevant as the judge was deciding to impose a sentence between 30 days to 90 days of actual jail time. The judge was concerned with the impact jail time would have on Ms. Smith's employment and ability to pay restitution. The judge then imposed a more lenient sentence, which modified the terms of the plea agreement, without notifying the prosecutor or defense in advance of the proposed change:

THE COURT: I'm going to give you a break. The law allows me to keep this off of your record and give you jail time at the same time. I want you to keep your job. I think that is the most important benefit that you come with.
I'm going to defer the imposition of sentence under [Md. Code, Criminal Law Article, §] 6–220. But you are still going to have to do jail time, 60 days. Now, I will make it on weekends to be convenient to you, but you say you work on weekends.

The judge changed the sentence to benefit Ms. Smith by imposing probation before judgment: "[t]his deal is getting sweeter and sweeter for you, ma'am." Even further, the

- 5 -

judge modified the sentence of 60 days of jail time by changing it to a sentence of home detention.

The prosecutor objected and relayed to the judge his concerns about deviating from the terms of the plea agreement:

> [PROSECUTOR]: Your Honor, may I be heard, briefly?  So the sentence, I'm unclear, the sentence is probation before judgment?
> THE COURT: That is correct.
> [PROSECUTOR]: I don't want to be sour grapes, but when we were contemplating a binding plea agreement and now we have arrived at a sentence that doesn't represent anything with respect to the binding plea agreement.  I wasn't prepared for this to go this direction.

The plea agreement clearly provided that Ms. Smith would be found guilty of a crime and serve jail time; instead, the sentence imposed by the judge did not include a finding of guilt or incarceration.  As a result of the sentence imposed, the State noted an appeal.  The Court of Special Appeals reversed the judgment of the Circuit Court.  *Smith*, 230 Md. App. at 218, 146 A.3d at 1193 (holding that the plea agreement was binding under Md. Rule 4–243(c)(3) and the judge's sentence was illegal under Md. Rule 4–345 as the sentence imposed was below the floor of the terms, by not including a finding of guilty, and it was imposed without the consent of the State).

Ms. Smith filed a petition for writ of certiorari in this Court.  We granted *certiorari* to answer the following questions:

1. Do the holdings in *Cuffley v. State*, 416 Md. 568 (2010) and *Baines v. State*, 416 Md. 604 (2010), under which a plea agreement is construed according to what a reasonable lay person in the defendant's position would have understood it to mean and any ambiguity must be resolved in the defendant's favor, apply when the State challenges a sentence allegedly imposed in violation of Md. Rule 4–243(c)?

2. Would a reasonable lay person in Petitioner's situation have believed that probation before judgment was precluded by the plea agreement where the agreement was silent as to probation before judgment and required Petitioner to pay $47,460 in restitution?

3. Under Md. Rule 4–243(c), which provides in part that "if [the guilty plea] is accepted, [the judge] may approve the [plea] agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs," is the court bound to the plea agreement upon accepting the guilty plea or may it reject the agreement after accepting the plea, and if the latter, did the trial court reject the agreement after accepting Petitioner's guilty plea?

4. Did the Court of Special Appeals err in holding that Petitioner's sentence was imposed in violation of Rule 4–243(c)(3)?

*Smith v. State*, 451 Md. 250, 152 A.3d 754 (2017).

We hold that the Court of Special Appeals did not err in holding that Ms. Smith's sentence was imposed in violation of Rule 4–243(c). Ordinarily, where there is a binding plea agreement in place, the judge must impose a sentence consistent with the terms of that agreement. In order to provide a more lenient sentence to the defendant, the judge must obtain the consent of the State and the defense. Further, we hold that the sentence in this case was illegal because it deviated from the terms of the plea agreement and was entered without the consent of both parties. Moreover, *Cuffley* and *Baines* provide that a plea agreement should be construed according to what a reasonable lay person in the defendant's position would have understood it to mean; this analysis is applicable when a defendant challenges the interpretation of a binding plea agreement. We determine, under the facts in the case at bar, the terms of agreement were unambiguous, and thus a reasonable lay person in the defendant's position would have understood the terms of the agreement to mean that there would be a finding of guilt and actual incarceration. Furthermore, when

- 7 -

the State makes a challenge to the interpretation of a plea agreement, we focus on whether both parties to the agreement received fairness and equity in the respective benefits of their bargain. Here, the State did not receive what it bargained for when the judge imposed a sentence below the terms of the plea agreement. Thus, under the standards for interpreting the plea agreement, the sentence imposed was below the terms agreed upon by the parties and the State did not consent to the deviation of the terms. Accordingly, we affirm the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

Our review of whether a trial court has violated the terms of a plea agreement is a question of law. *Cuffley v. State*, 416 Md. 568, 581, 7 A.3d 557, 564 (2010). We, therefore, review *de novo* the question of whether Ms. Smith's plea agreement has been violated. *See Tweedy v. State*, 380 Md. 475, 482, 845 A.2d 1215, 1219 (2004) ("Whether a plea agreement has been violated is a question of law which we review *de novo*.").

## DISCUSSION

Ms. Smith contends that the trial court did not approve the plea agreement and was thus not bound by its terms. According to Ms. Smith, because the plea agreement was ambiguous and silent as to probation before judgment, it could have been imposed by the judge and a reasonable lay person in the defendant's position could have interpreted the agreement to allow for such a sentence. Ms. Smith claims that by imposing probation before judgment instead of a conviction, the trial court did not enter a disposition more favorable to her. To the contrary, she maintains that the court imposed a sentence identical to what was expected in the plea agreement, and thus the State should not have appealed.

- 8 -

The State, on the other hand, contends that the court unambiguously bound itself to impose a sentence in conformity with the plea agreement and, therefore, erred when it imposed a sentence more favorable to Ms. Smith without the State's consent. Moreover, it is the State's position that the terms of the plea agreement were clearly discernible.

**Plea Agreements**

We agree with the Court of Special Appeals' explanation of a plea agreement:

> A plea agreement is, of course, a contract between a criminal defendant and the State in which each seeks to gain a benefit and, in return for such benefit, each agrees to pay a price. It is a very special contract, moreover, in that even after the basic quid pro quo is agreed upon by the primary contracting parties, the entire package may be submitted to a criminal court for its approval and its subsequent enforcement. If it should then be the enforcing authority (to wit, the court) that commits a breach of the contract, what even-handed justice requires is that each of the primary contracting parties, if suffering from the breach, is equally entitled to seek a remedy under equally conducive procedural conditions.

*Smith*, 230 Md. App. at 218, 146 A.3d at 1191–92.

This Court in *Dotson v. State*, 321 Md. 515, 517, 583 A.2d 710, 711 (1991), discussed the importance of encouraging plea agreements to aid in the administration of justice and eliminate "uncertainties and practical burdens of trial, permit the judiciary and prosecution to concentrate their resources on those cases in which they are most needed, and further law enforcement by permitting the State to exchange leniency for information and assistance." We noted that an overwhelming percentage of criminal cases are resolved through plea agreements, saving time and resources by avoiding the burden of a full-scale trial. *Dotson*, 321 Md. at 517, 583 A.2d at 710. The Court of Special Appeals also discussed the advantages of plea agreements in *Banks v. State*:

One of the reasons the process works effectively is the element of certainty it lends to the criminal justice system. From the public perspective, it may well be advantageous for the prosecutor to exchange the uncertainty of conviction following trial for the certainty of conviction produced by a guilty plea, even when a plea agreement includes some provision in mitigation of potential sentence. From the defense viewpoint, it may be equally advantageous to give up the possibility of acquittal following trial for the certainty of a relatively lenient disposition included as part of a plea agreement. We recognized the importance of this "certainty" aspect of plea bargaining, and the adverse effect its loss would have on the process, in [] *Sweetwine*: "If the prosecutor cannot rely upon the plea bargain, the potential 'chilling effect' upon the very institution of plea bargaining could be devastating." 42 Md. App. at 12, 398 A.2d 1262. Similar results could ensue if the defendant were unable to rely upon the bargain. Thus, plea bargains have been enforced both against the State, as in *State v. Brockman*, *supra*, and against the defendant, as in *Blinken v. State*, 291 Md. 297, 435 A.2d 86 (1981).

*Banks v. State*, 56 Md. App. 38, 52, 466 A.2d 69, 75–76 (1983). *See also State v. Sanders*, 331 Md. 378, 385, 628 A.2d 209, 212 (1993) (holding that the court may impose a disposition more favorable to the defendant only if the parties agree). Under our jurisprudence, both parties are equally protected from a breach of this agreement:

That it was critical in *Dotson* that the violation of the plea agreement prejudiced the defendant does not mean that a violation of a plea agreement that prejudices the State is beyond the reach of principles of fairness and equity or that the institution of plea bargaining cannot be adversely affected. Just as a defendant would be [sic] loathe to participate in plea bargaining if he or she could not be certain that the bargain that he or she made would be fulfilled, so too would the State. There would be no incentive for the State to engage in plea bargaining if it were possible for a defendant to enter into a binding plea agreement only to have the sentence contemplated by that agreement modified a short time later. Nor would it be fair to the State, which is, after all, one of the parties to the agreement.

*Chertkov v. State*, 335 Md. 161, 174, 642 A.2d 232, 238–39 (1994).

A sentence is illegal if, without the permission of both parties to the agreement, a judge fails to embody in its judgment the terms of the binding plea agreement. *See Sanders*, 331 Md. at 388, 628 A.2d at 214. Md. Rule 4-243(c)(3) provides:

> Approval of plea agreement. If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

The *Bonilla* case made clear that a sentence is illegal, within the meaning of Rule 4–345(a), if it (1) exceeds the maximum ceiling set by the plea agreement or (2) falls below the minimum floor set by the plea agreement. *Bonilla*, 443 Md. at 3, 12, 115 A.3d at 99, 104 ("Considering *Dotson*, *Cuffley*, *Matthews*, and *Chertkov*, we conclude that when a sentencing court violates Rule 4–243(c)(3) by imposing, without consent, a sentence that falls below a binding plea agreement, the resulting sentence is inherently illegal under Rule 4–345(a)."). *See also Cuffley*, 416 Md. at 575 n.1, 7 A.3d at 561 n.1 ("Maryland Rule 4-345(a) permits a court to correct an illegal sentence at any time. If a sentence is 'illegal' within the meaning of that section of the rule, that is, the illegality inheres in the sentence itself, then the defendant may file a motion in the trial court to correct it, notwithstanding that (1) no objection was made when the sentence was imposed, (2) the defendant purported to consent to it, or (3) the sentence was not challenged in a timely-filed direct appeal or at some other previous procedural juncture. If the court denies a motion to correct such an illegality, the defendant has the right to challenge the ruling on direct appeal. We have held that a sentence that exceeds the sentence to which the parties agreed as part of a plea agreement is an illegal sentence within the meaning of Rule 4–345(a)." (citations and

internal quotation marks omitted)). Moreover, under Md. Rule 4–345(a), "[t]he court may correct an illegal sentence at any time."

In *Bonilla*, this Court considered whether a sentence was illegal when "a sentencing court impose[d] a sentence below the sentence agreed to in a binding plea agreement without the State's consent." *Bonilla*, 443 Md. at 3, 115 A.3d at 99 (involving a challenge brought by the State and establishing that such body of law applies to both parties of the plea agreement). In that case, the parties had agreed that Mr. Bonilla would plead guilty to murder Counts I and III, and Mr. Bonilla would testify, for the State, if called, against a co-defendant. *Bonilla*, 443 Md. at 4, 115 A.3d at 99. In exchange Mr. Bonilla would receive a sentence of life imprisonment on Count III with a consecutive sentence of life imprisonment, with all but 20 years suspended, on Count I. Moreover, the State would enter a *nolle prosequi* to the remaining counts charged in the indictment. *Id.* At the plea hearing, the terms were presented to the judge, the State proffered the facts, the judge determined that Mr. Bonilla was voluntarily pleading guilty, and the judge accepted the plea and approved the agreement. *Bonilla*, 443 Md. at 4, 115 A.3d at 99–100.

The sentencing, however, was postponed until after the co-defendant's trial. *Id.* At sentencing for Mr. Bonilla, defense counsel incorrectly stated that the parties had agreed to a lower sentence of life imprisonment, with all but 20 years suspended, on Count III, rather than life imprisonment, without any portion of the sentence suspended. *Bonilla*, 443 Md. at 5, 115 A.3d at 100. The State did not recognize the error, and the court sentenced Mr. Bonilla to life imprisonment on Count I and a consecutive sentence of life imprisonment, with all but 20 years suspended, on Count III. *Id.* On review, we concluded

"that when a sentencing court violates Rule 4–243(c)(3) by imposing a sentence below a binding plea agreement without the State's consent, the sentence is inherently illegal and subject to correction under Rule 4–345(a)." *Bonilla*, 443 Md. at 15, 11, 115 A.3d at 106, 104 ("Rule 4–243(c)(3) prohibits a sentencing court from imposing a sentence below a binding plea agreement if the parties do not agree to the deviation . . . Indeed, the court may impose a disposition more favorable to the defendant only if the parties agree.").

In the present case, we hold that deviating from the terms of the binding plea agreement, as approved by the court, results in an illegal sentence, regardless of whether the deviation is upwards or downwards. As the Court of Special Appeals noted, just as a defendant enjoys the protection of the Due Process Clause, the State enjoys the principles of fairness and equity. *Smith*, 230 Md. App. at 221, 146 A.3d at 1193. *See also Bonilla*, 443 Md. at 12–13, 115 A.3d at 104–05 ("In *Cuffley*, we confirmed that 'fairness and equity govern the enforcement of plea agreements.' As such, when the State and a defendant have entered into a binding plea agreement, each party is entitled to the benefit of its bargain. Concluding that sentences below binding plea agreements are legal under Rule 4–345(a) would be unfair to the State by depriving it of the benefit of its bargain."). The *Bonilla* Court noted that Mr. Bonilla

> recognizes the sentences this Court declared inherently illegal in *Dotson* and *Cuffley* exceeded the plea agreements. Neither our reasoning nor our holdings in those cases, however, suggest that striking a sentence as illegal can only occur when a sentence exceeds the terms of a binding plea agreement. In both cases, we determined that the sentences were illegal because the sentencing courts violated Rule 4–243(c)(3) by deviating from the binding plea agreements.

*Bonilla*, 443 Md. at 10, 115 A.3d at 103.

- 13 -

As Judge Charles E. Moylan, Jr., writing for the Court of Special Appeals, thoroughly explained, in this case, a judge conditionally accepts a plea agreement, with the expectation that he or she will accept the terms. *Smith*, 230 Md. App. at 227, 146 A.3d at 1196–97. The judge conditionally accepts the terms if they appear to be reasonable, but conditions it upon hearing the facts first, and, if some unexpected revelation does not occur, the judge fully accepts the terms of the plea agreement. When there are no unexpected revelations and once the conditional acceptance is satisfied, then the conditional acceptance becomes an absolute acceptance. *See Tweedy v. State*, 380 Md. 475, 483–84, 845 A.2d 1215 (2004) (discussing conditional acceptances and absolute acceptances). Ultimately, the judge accepts the plea bargain after he or she has heard the statement of supporting facts and then starts discussing and using the language of the plea bargain. As Judge Moylan further explained, "[t]here is a symbiosis between the two acceptances and it is impossible to say which, if either, came first. This transition should be discernible by the defense, even without kettle drums. In this case, it was discernible by us." *Smith*, 230 Md. App. at 227, 146 A.3d at 1197.

In interpreting the discussions between the State, defense counsel, Ms. Smith, and the judge, we conclude that it is clear that the judge conditionally agreed to be bound by the terms subject to some unforeseen issue in the subsequent statement of supporting facts. The prosecutor explained the terms of the agreement, stating, "I would like to add that despite the range, the 90 and 30 days, it is contemplated this would be a binding plea, therefore, it can only be modified in the future if both parties agree." The judge also indicated that he would need to hear the facts from the State before he could agree to bind

himself to the terms: "I have to hear the facts before I'm willing to do that." Additionally, the judge explained to Ms. Smith the limits on the sentence that the plea bargain had imposed and that he, the judge, was prepared to follow. The judge stated, "Okay, I see. Ms. Smith, the [State] is asking me to bind myself so I won't give you any more than 90 days jail time." Next, the prosecutor provided a statement of facts in support of the plea, which Ms. Smith agreed was accurate. Ms. Smith also stated that she knowingly and voluntarily wished to plead guilty. The judge then expressly accepted the plea:

> The Court is satisfied the State has provided an adequate factual basis for me to accept [Ms. Smith]'s plea of guilty. I find that her plea of guilty is freely, voluntarily made and with understanding of what she is doing. And the Court accepts her guilty plea and finds you guilty, ma'am, of Count 1 of the indictment in this case.

Accordingly, we hold, as a matter of law, that prior to sentencing, the court unquestionably accepted the plea agreement and bound itself to its terms. *See Tweedy*, 380 Md. at 485, 845 A.2d at 1221 ("Once the plea was accepted, the court was required to impose the agreed upon sentence, assuming that all the conditions imposed upon the defendant were fulfilled."); *State v. Poole*, 321 Md. 482, 497, 583 A.2d 265, 272 (1991).

At the sentencing phase of the proceeding, the judge having previously accepted the terms of the agreement, provided even greater leniency to the defendant because of the court's concern about the impact that the sentence might have on Ms. Smith's continued employment. As a result of the sentence imposed, the judge breached the terms of the agreement between the parties. The sentencing judge's breach of the plea agreement was apparently an unconscious breach because Rule 4–243(c)(4) provides that "[i]f the plea agreement is rejected, the judge shall inform the parties of this fact." The sentencing judge

- 15 -

never indicated to the parties that he intended to deviate from the terms of their agreement. *See Tweedy*, 380 Md. at 484–85, 845 A.2d at 1220–21. Here, the judge imposed a sentence of probation before judgment and 60 days of home detention. The plea agreement, however, specified that Ms. Smith would be found guilty of the theft charge and the jail sentence would be between 30 or 90 days.

Accordingly, we hold that the sentence imposed in the case at bar was not consistent with the terms of the binding plea agreement, as it fell below the minimum floor set by the agreement and was without the consent of the State; thus, the sentence is illegal.

### Reasonable Interpretation of the Plea Agreement

As the Court of Special Appeals explained, not unlike the *Bonilla* case, when the State makes a challenge to the interpretation of a plea agreement based on the mandatory limits of that agreement, we focus on whether the State and the defendant obtained the respective benefits of their bargain and what they expected pursuant to the terms of the agreement. *Smith*, 230 Md. App. at 237, 146 A.3d at 1202. On the other hand, where a defendant challenges the State's interpretation of the plea agreement the standard is that a plea agreement should be construed according to what a reasonable lay person in the defendant's position would have understood it to mean. This case involves both the State's challenge to a sentence that falls below the minimum set by the binding plea agreement entered into between the parties, as well as the defendant's challenge to the State's interpretation of the terms. Writing for the Court of Special Appeals in this case, Judge Moylan explained the significance of evaluating the plea in the procedural context of the challenge to a sentence. He wrote:

> When, in a challenge to a sentence brought by the State, our focus is on whether the State got what it had a right to expect pursuant to a plea agreement, what the [defendant] may or may not have thought about it is totally immaterial. If a sentence is illegal, as in *Bonilla*, because it fell below the mandatory floor bargained for in the plea agreement, the [defendant] cannot make it legal by putting her interpretive seal of approval on it. To say the plea agreement meant whatever the [defendant] thought that it meant is ridiculous. That would empower the [defendant] to decide the case.

*Smith*, 230 Md. App. at 237, 146 A.3d at 1202.

When a defendant challenges the sentence imposed on the ground that he or she did not receive the benefit of the plea bargain, our focus is then on "the defendant's rights, the defendant's entitlements, and the defendant's reasonable expectations because those [are] the only issues then before the [tribunal]." *Smith*, 230 Md. at 236, 146 A.3d at 1202. We note that in *Bonilla* the sentence was imposed by mistake, and all of the parties failed to recognize that at the time, thus there was no issue of interpretation or ambiguity of the plea agreement's terms. In the present case, the defendant challenges the State's interpretation of the plea agreement, and the State challenges the defendant's interpretation. Our focus on the State's procedural challenge involves a determination of what Ms. Smith and the State bargained for, and what each party had a right to expect pursuant to the plea agreement. The State had a right to expect Ms. Smith's conviction for theft and a sentence of actual incarceration between 30 to 90 days. Ms. Smith did not bargain for probation before judgment, and the State did not consent to change the disposition to probation before judgment. It is unreasonable to say that Ms. Smith bargained for probation before judgment where that term is neither contemplated by the agreement nor mentioned in the agreement and is inconsistent with a conviction and sentence between 30 and 90 days.

- 17 -

Shifting our focus to the standard used when a defendant challenges the sentence imposed, we hold that no reasonable lay person in Ms. Smith's position, pursuant to the clear terms of the plea agreement could have reasonably expected a sentence below the minimum set by the agreement. Ms. Smith cites to *Cuffley*, 416 Md. at 582, 7 A.3d at 565–66 and *Baines*, 416 Md. at 615, 7 A.3d at 584–85, for the proposition that a plea agreement is construed according to what a reasonable lay person in the defendant's position would have understood it to mean:

> We conclude that, by its express terms, Rule 4–243 requires strict compliance with its provisions. We further conclude, as the natural consequence of requiring strict compliance with the Rule, that any question that later arises concerning the meaning of the sentencing term of a binding plea agreement must be resolved by resort solely to the record established at the Rule 4–243 plea proceeding. The record of that proceeding must be examined to ascertain precisely what was presented to the court, in the defendant's presence and before the court accepts the agreement, to determine what the defendant reasonably understood to be the sentence the parties negotiated and the court agreed to impose. The test for determining what the defendant reasonably understood at the time of the plea is an objective one. It depends not on what the defendant actually understood the agreement to mean, but rather, on what a reasonable lay person in the defendant's position and unaware of the niceties of sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding. It is for this reason that extrinsic evidence of what the defendant's actual understanding might have been is irrelevant to the inquiry.

*Cuffley*, 416 Md. at 582, 7 A.3d at 565–66. In *Cuffley*, the defendant pleaded guilty to robbery pursuant to a plea agreement and the State agreed to a guidelines sentence of 4 to 8 years. *Cuffley*, 416 Md. at 573–74, 7 A.3d at 560. At the plea hearing, the court found that Mr. Cuffley knowingly and voluntarily entered the plea and the court accepted the plea agreement pursuant to Rule 4–243(c), binding itself to its terms. *Cuffley*, 416 Md. at 574, 7 A.3d at 560. Later, at the sentencing hearing, the court imposed a sentence of 15 years

- 18 -

imprisonment with all but 6 years suspended. *Id.* Mr. Cuffley filed a Rule 4–345(a) motion, arguing that the sentence was illegal because it exceeded the maximum sentence of 8 years according to the plea agreement. *Cuffley*, 416 Md. at 574–75, 7 A.3d at 561. He also asserted that he understood the agreement to provide for a total sentence of no more than 8 years, and to his knowledge his attorney did not inform him that he could receive suspended time above the 8 year cap; moreover, Mr. Cuffley argued that he would have remembered because he was always concerned with how much time he would have over his head. *Cuffley*, 416 Md. at 575, 7 A.3d at 561. We noted that "[a]ll that is relevant, for purposes of identifying the sentencing term of the plea agreement, is what was stated on the record at the time of the plea concerning that term of the agreement and what a reasonable lay person in [Mr. Cuffley's] position would understand, based on what was stated, the agreed-upon sentence to be." *Cuffley*, 416 Md. at 584, 7 A.3d at 566.

The case at bar is unlike *Cuffley*, where "[n]o mention was made at any time during that proceeding-much less before the court agreed to be bound by the agreement and accepted [Mr. Cuffley's] plea—that the [4]-to-[8]-year sentence referred to executed time only" and thus, "a reasonable lay person in [Mr. Cuffley's] position would not understand that the court could impose the sentence it did." *Cuffley*, 416 Md. at 585, 7 A.3d at 567. As we have noted, here, the State indicated that Ms. Smith would be pleading guilty to a count of theft and did not indicate that the disposition of probation before judgment was a part of the plea agreement or indeed even a possibility. Moreover, the prosecutor also expressly stated that the parties did not agree to home detention as an option, but that the agreement contemplated serving time on weekends. Unlike in *Cuffley*, given the facts at

hand, the terms of the agreement were clearly discernible and not ambiguous. Thus, in the present case, the sentencing judge erred by imposing a sentence inconsistent with the plea agreement and without the State's consent.

In *Baines*, which we decided the same day as *Cuffley*, the plea agreement provided that Mr. Baines would plead guilty to two counts of armed robbery and that he would be sentenced within the guidelines, which was 7 to 13 years. *Baines*, 416 Md. at 607, 7 A.3d at 580. "The court accepted the plea and agreed 'just [to] commit [itself] within [the] Guidelines.'" *Id.* However, the court sentenced him on the first count to 20 years, all but 7 years suspended, and on the second count to a consecutive 20 years, all but 6 years suspended. We held that Mr. Baines "reasonably understood that the court would not impose a total sentence exceeding 13 years, including both non-suspended and suspended time. Therefore, [he was] entitled to the relief of specific performance of the agreement." *Baines*, 416 Md. at 607–08, 7 A.3d at 580.

Just like in *Baines*, the judge in this case also explicitly agreed to bind himself to the terms of the agreement when he stated, "I agree to sentence you within the ranges recommended by the attorneys" and

> [t]he Court is satisfied the State has provided an adequate factual basis for me to accept [Mr. Smith]'s plea of guilty. I find that her plea of guilty is freely, voluntarily made and with understanding of what she is doing. And the Court accepts her guilty plea and finds you guilty, ma'am, of Count 1 of the indictment in this case.

Also similar to *Baines*, the judge here imposed a sentence that was not in accordance with the plea agreement. In *Baines* we held that the terms and sentencing guidelines were clear and a reasonable person in the defendant's position would have understood those terms.

As we have discussed, this determination is also true in the case *sub judice*. Accordingly, we hold that no reasonable lay person in Ms. Smith's position could have expected, under the terms of the plea agreement, to receive a sentence below the minimum set by the agreement.

Moreover, we do not agree with Ms. Smith that a sentence of probation before judgment is identical to a conviction. A conviction has many consequences that a sentence of probation before judgment would not, including

> possible enhanced sentencing if convicted again, possible deportation, possible loss of the right to vote, disqualification for public office, possible loss of employment (as the judge articulated in this case), the rejection of one's application to the country club. The consequences may be myriad, large and small. The debilitating stigma of conviction is harmful in and of itself.

*Smith*, 230 Md. App. at 239, 146 A.3d at 1203–04. The terms of the agreement unambiguously included a finding of guilt, not probation before judgment. The terms were clear and no reasonable lay person in the defendant's position could have interpreted them otherwise. Moreover, the State did not receive the benefit of its bargain.

**CONCLUSION**

For the reasons stated above, we affirm the judgment of the Court of Special Appeals. The judge in this case was bound by the terms of the plea agreement and should have imposed a sentence consistent with those terms. Because the judge deviated from the terms of the plea agreement without the consent of both parties, the sentence was illegal.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

- 21 -